## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CIELO JEAN GIBSON, DESSIE MITCHESON, IRINA VORONINA, JOHN COULTER, and MAYSA QUY,

Plaintiffs,

- against -

RESORT AT PARADISE LAKES, LLC d/b/a PARADISE LAKES RESORT d/b/a PARADISE LAKES and JERRY L. BUCHANAN,

Defendants.

Civil Action No. _____

**COMPLAINT**
(Jury Trial Demanded)

## COMPLAINT

COME NOW Plaintiffs CIELO JEAN GIBSON, DESSIE MITCHESON, IRINA VORONINA, JOHN COULTER, and MAYSA QUY (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for their Complaint against Defendants RESORT AT PARADISE LAKES, LLC doing business as PARADISE LAKES RESORT also doing business as PARADISE LAKES and JERRY L. BUCHANAN (collectively, "Defendants") state as follows:

## INTRODUCTION

1.      Over the course of three (3) years, Defendants pirated various images, likeness and/or identities of each Plaintiff model for self-serving commercial purposes, to wit: to advertise, promote and market Defendants' own business interests on social media accounts owned, operated, hosted, or controlled by Defendants.

2.      Defendants are unapologetic, chronic and habitual infringers.

3.     Defendants did not negotiate for or purchase the images.

4.     Defendants did not seek or obtain consent or authority to use any of the Plaintiffs' images for any purpose.

5.     None of the Plaintiffs agreed, nor would any Plaintiff have agreed, to Defendants' use of their image, likeness and/or identity.

6.     Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use of any image, each Plaintiff would have promptly and unequivocally declined.

7.     Defendants' conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff model depicted in the misappropriated images is somehow affiliated with Defendant Resort at Paradise Lakes, LLC doing business as Paradise Lakes Resort also doing business as Paradise Lakes ("Paradise Lakes"), has contracted to perform at and/or participate in events at Paradise Lakes, has been hired to promote, advertise, market or endorse its events and other activities offered at Paradise Lakes, and/or that each Plaintiff depicted in the advertisements has attended or will attend each event and has participated in or intends to participate in the activities advertised.

8.     Defendants' conduct is also injurious to each Plaintiff.

9.     Defendants circumvented the typical arms-length negotiation process entirely and pirated the subject images. In doing so, **Defendants have utterly deprived each Plaintiff the right and ability to say "no."**

10.     Defendants have prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely.

In short, Defendants deprived each Plaintiff the ability to protect her/his image, brand and reputation.

11.     In the end, Defendants gained an economic windfall by using the images of professional and successful models for Defendants' own commercial purposes, luring and enticing patrons worldwide to view the images and visit Paradise Lakes, without having to compensate the models a single penny for such usage.  Plaintiffs, however, sustain injury to their images, brands and marketability by shear affiliation with Paradise Lakes and the type of resort operated by Defendants.

12.     Having operated a business in the adult entertainment and nudist vacation industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

13.     By defaming and embarrassing Plaintiffs and associating Plaintiffs' images and likenesses with Paradise Lakes,  Defendants' conduct is not merely a misuse in connection with an innocuous brand or event.

**PARTIES**

**A.  Plaintiffs**

14.     Given the multitude of violations harming numerous models, and the similarity of misconduct from Defendants harming all models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models.

15.     Plaintiff Cielo Jean Gibson ("Gibson") is, and at all times relevant to this action was, a professional model and a resident of Santa Monica, California.

16.     Plaintiff Dessie Mitcheson ("Mitcheson") is, and at all times relevant to this action was, a professional model and a resident of Costa Mesa, California.

17.     Plaintiff Irina Voronina ("Voronina") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

18.     Plaintiff John Coulter ("Quy") is, and at all times relevant to this action was, a professional model and a resident Los Angeles, California.

19.     Plaintiff Maysa Quy ("Quy") is, and at all times relevant to this action was, a professional model and a resident of Las Vegas, Nevada.

## B.  Defendant, Resort at Paradise Lakes, LLC d/b/a Paradise Lakes Resort d/b/a Paradise Lakes

20.     Based on publicly available records, and further upon information and belief, Resort at Paradise Lakes, LLC d/b/a Paradise Lakes Resort d/b/a Paradise Lakes is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 2001 Paradise Lakes Blvd. Lutz, Florida 33558.

21.     Paradise Lakes holds and at all times relevant, has held itself out as a nudist resort that engages in the business of entertaining its patrons with alcohol, music, hotel rooms, and several amenities including a nightclub.

22.     Paradise Lakes owns and/or operates www.ParadiseLakes.com as well as other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Plaintiff models were used to market and promote the events.

23.     Upon information and belief, Paradise Lakes coordinated its advertising, marketing and promotional activities through, among other things, active and dynamic use of its

website www.ParadiseLakes.com, among others, and various coordinated social media promotions through Facebook, and Twitter, among others.

## C.  Defendant, Jerry L. Buchanan

24.     Based on publicly available records, and upon information and belief, Jerry L. Buchanan ("Buchanan"), is an individual who works and/or resides in Pasco County, Florida.

25.     Based upon publicly available records, and upon information and belief, Buchanan presently serves, and during all times relevant to the allegations raised herein served, as the owner of Defendant Resort at Paradise Lakes, LLC d/b/a Paradise Lakes Resort d/b/a Paradise Lakes.

26.     As the owner of Defendant Resort at Paradise Lakes, LLC d/b/a Paradise Lakes Resort d/b/a Paradise Lakes, Buchanan has, and during all times relevant to the allegations raised herein had, operational and managerial control and responsibility over the business operations of, and decision-making authority for, Paradise Lakes, including decisions relating to Paradise Lakes' promotional, advertising, marketing and endorsement activities such as those detailed in this Complaint.

## JURISDICTION AND VENUE

27.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).  This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

28.     The Court has personal jurisdiction over Defendants based on their contact with the State of Florida, including but not limited to Paradise Lakes' registration to conduct business in Florida, its physical location and principal place of business in Florida, as well as Buchanan's

residence in the State of Florida and upon information and belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

29.     Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because Paradise Lakes and Buchanan reside in the Middle District of Florida and Paradise Lakes has its principal place of business in Pasco County, Florida and all acts giving rise to the claims set forth herein occurred or originated in Pasco County, which is in the Middle District of Florida.

## FACTUAL BACKGROUND

**A. Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

30.     In the modeling industry, reputation is critical. Protection of a model's reputation is therefore of paramount importance.

31.     Each Plaintiff is a professional model who earns a living by promoting his/her image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on his/her reputation and own brand for modeling, acting, hosting, and other opportunities.

32.     Each Plaintiffs' career in modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation that each of them have built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

33.     Each Plaintiff has worked to establish himself/herself as reliable, reputable and professional.

34.     Each Plaintiff must necessarily be vigilant in protecting his/her "brand" from harm, taint, or other diminution.

35.     Any improper or unauthorized use of an image, likeness and/or identity could substantially injure the career and career opportunities of each Plaintiff.

36.     In the modeling industry, models such as Plaintiffs typically do not have a single employer, but rather work as independent contractors for different agents or entities.

37.     Each Plaintiff is a responsible professional in the ordinary course.  Each Plaintiff seeks to control the use and dissemination of his/her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

38.     Plaintiffs' vetting and selection of a professional engagement involves a multi-tiered assessment, such as, but not limited to:

    a.  determining whether the individual or entity seeking a license and release of a model's image, likeness and/or identity is reputable, has reputable products or services, and, through affiliation therewith, would either enhance or harm a model's stature or reputation;

    b.  this reputational information is used in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel and how his/her image is going to be used – known as "usage" (among other variables);

    c.  to protect his/her reputation and livelihood, Plaintiffs and/or their agents carefully and expressly define the terms and conditions of use;

    d.  the entire negotiated deal is reduced to and memorialized in an integrated, written agreement of limited duration (typically 1-3 years) which define the parties' relationship. The terms and conditions of the agreement typically, unless

otherwise expressly delineated, bind and are applicable to only the parties to that agreement.

39.     Endorsing, promoting, advertising or marketing the "wrong" product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact Plaintiffs' careers by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify Plaintiffs' earning potential and career opportunities by making Plaintiffs more sought after and desirable.

**B.  Defendants Have Misappropriated Each Plaintiff's Image, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

40.     As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated by or at the direction of Defendants.  Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared and participated or will appear and participate in activities or events at Paradise Lakes, and/or has agreed and consented to advertise, promote, market or endorse Paradise Lakes or one or more Paradise Lakes' events or activities.

*Plaintiff Cielo Jean Gibson*

41.     Gibson is an accomplished American model who enjoys great success in her industry. Gibson has over fifty four thousand (54,000) Instagram followers[1], has appeared in *FHM Magazine*, and was the *Import Tuner* model search winner. She has a tremendous motor sport following as the Falken Drift Team model and the Short Block Technologies Inc. model.

---

[1]     In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

Gibson is also a Top Rank Boxing model who continues to promote and market a number of different companies' sport and fitness equipment.

42.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Gibson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

43.     Gibson's image, likeness and/or identity are depicted in at least one photograph, enclosed as **Exhibit A** to the Complaint, which has been used at least one time to create the false perception that Gibson has consented or agreed to promote, advertise, market and/or endorse Paradise Lakes' "Finally Friday" event to benefit Defendants' commercial interests. On October 25, 2013, Defendants uploaded Gibson's image to Paradise Lakes' Twitter page to advertise their "Finally Friday" event as well complimentary entrance for "couples and single ladies after 5 pm." The salacious caption next to the image of Gibson also provided, "Lingerie Night in Club Reveal, Wear your Sexiest!" The caption, together with the logo of Paradise Lakes and the image of Gibson were used to wrongfully imply that Gibson is one of Paradise Lakes' employees, entertainers, contractors, and/or nudists.

44.     Gibson's image, likeness and/or identity in **Exhibit A** are being used by Defendants in various marketing and promotional mediums ("usages") such as advertising, on various social media accounts, as coupons, and for branding purposes.

45.     Gibson has never been employed by Defendants or contracted with Defendants to participate in events at Paradise Lakes.

46.     Gibson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

47.     Defendants never sought permission or authority to use Gibson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

48.     Gibson never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

49.     Defendants neither offered nor paid any remuneration to Gibson for the unauthorized use of her image, likeness and/or identity.

50.     Defendants' use of Gibson's image, likeness and/or identity in connection with Paradise Lakes' event impugns Gibson's character, embarrasses her, and suggests – falsely – her support for and participation in a nudist lifestyle.

51.     Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gibson's image in their market activities and business. In doing so, Defendants have further damaged Gibson.

### *Plaintiff Dessie Mitcheson*

52.     Mitcheson is a model and actress. She is best known for winning *Maxim's* "Hometown Hottie" contest in 2013. The previous year she was named the Face of the MGM Grand and the Face of *Playboy* Intimates. Mitcheson most recently stood by Floyd Mayweather's side at the biggest fight of the century as the main ring girl. Mitcheson currently has over one hundred thirty seven thousand (137,000) Instagram followers, almost eighteen thousand (18,000) Facebook followers, and over nine thousand (9,000) Twitter followers.

53.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

54.     Mitcheson's image, likeness and/or identity are depicted in at least one photo, enclosed as **Exhibit B** to the Complaint, which has been used at least one time to create the false perception that Mitcheson has consented or agreed to promote, advertise, market and/or endorse Paradise Lakes' "Thurs Nite Football!" events to benefit Defendants' commercial interests. On December 5, 2013, Defendants uploaded Mitcheson's image to Paradise Lakes' Twitter page to promote and market their happy hour, "4 Big Screen TVs", sports menu, and drink specials. The caption next to the image of Mitcheson further provided, "Join us for #happyhour[2] 5PM-CLOSE tonight #RepealDay just happens to fall on a Thurs (we do this every wk) but enjoy!!" The image of Mitcheson was used to deceive the viewing public and the visiting patrons that Mitcheson is one of Paradise Lakes' employees, entertainers, contractors, and/or nudists.

55.     Mitcheson's image, likeness and/or identity in **Exhibit B** are being used by Defendants in various marketing and promotional mediums ("usages") such as advertising, on various social media accounts, and as coupons.

---

[2]     The use of hashtags on Plaintiffs' images, likeness and identity is especially damaging to Plaintiffs, since a hashtag ensures that Plaintiffs' images, likeness and identity is now "searchable" and will reside with other social media images and/or content that may be similarly as offensive. A hashtag is a type of label or metadata tag used on social networks and microblogging services, which makes it easier for users to find messages or images with a specific theme or content. Users create and use hashtags by placing the hash character (or number sign) in front of a word or unspaced phrase, either in the main text of a message or at the end. Searching for that hashtag will then present each message or image that has been tagged with the same hashtag. For example, when a user searches for such hashtag as "#happyhour" or "#RepealDay", an innumerable amount of sexual and lewd images will appear along with Plaintiffs' images, likeness and identity.

56.     Mitcheson has never been employed by Defendants or contracted with Defendants to participate in events at Paradise Lakes.

57.     Mitcheson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

58.     Defendants never sought permission or authority to use Mitcheson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

59.     Mitcheson never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

60.     Defendants neither offered nor paid any remuneration to Mitcheson for the unauthorized use of her image, likeness and/or identity.

61.     Defendants' use of Mitcheson's image, likeness and/or identity in connection with Paradise Lakes' events impugns Mitcheson's character, embarrasses her, and suggests – falsely – her support for and participation in a nudist lifestyle.

62.     Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mitcheson's image in their market activities and business.  In doing so, Defendants have further damaged Mitcheson.

### *Plaintiff Irina Voronina*

63.     Voronina is an international model and actress. As her international modeling career began to skyrocket, Voronina was brought to America, where she was introduced to

*Playboy* Studios in Los Angeles, California. She eventually became *Playboy*'s Miss January, 2001 and then permanently relocated to Los Angeles, California to take her career to the next level. She signed with Wilhelmina L.A., which offered her the opportunity to work with world-famous photographers such as Teri Richardson, Mathew Rolston, Antoine Verglas, David LaChapelle, and many others. Now, Voronina is an advertiser's dream, known for her sultry look, charm, and on-set professionalism. Voronina's beauty has represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, Sisley & Detour, to name a few. She has millions of visual impressions around the globe via covers and pages of worldwide magazines, such as *FHM*, *Maxim*, *Playboy* (in 20 countries), *Max* (Italy), *Ocean*, *Shape*, *944*, *Knock-out*, *Q* (United Kingdom), *People* (Australia), and most recently *Kandy*, *Rukus*, *Vape* and *Browz*. In addition to being a model, Voronina has appeared on television and the big screen. She has over three million six hundred thousand (3,600,000) followers on Facebook, over four hundred and sixty thousand (460,000) Instagram followers, one hundred and seven thousand (107,000) Twitter followers, and almost seven hundred thousand (700,000) YouTube views.

64.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Voronina negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

65.    Voronina's images, likeness and/or identity are depicted in at least two photographs, enclosed as **Exhibit C** to the Complaint, which have been used at least three times to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse Paradise Lakes' activities and events to benefit Defendants' commercial interests. On October 31, 2014, Defendants uploaded Voronina's image to Paradise Lakes' Twitter page for the purposes of promoting their "Halloween in Paradise" and "Midnight

Costume Parade" events as well as "$1400 Prize Package!!" and a chance to "Win a FULL YEAR Membership!" The caption next to the image of Voronina also advertised, "Witching Hour Sat night (11/1) When the clock strikes 12, the Midnight Costume Contest will be on!#HalloweenCostumes." Voronina appears as the model wearing a woman's Halloween pirate outfit. On November 1, 2014, Defendants uploaded the same image of Voronina to their Facebook page, but this time, the caption provided, "Are you little Ghouls all set for tonight? If you forgot anything – the Boutique is open until 7pm We can't wait to see what all you Spirits are coming as tonight!!!"

66.     On August 15, 2015, Defendants used another stolen image of Voronina to promote another sexually charged event called "Toga Party Theme Night."  The image was uploaded to Defendants' Facebook page and advertised admission prices, VIP seating, and drink specials. The caption next to the image of Voronina read, "Wrap yourself up in a sheet or throw a laurel wreath on your head and call it done!! Just get here for the toga, togA, , toGA, TOGA!! Party tonight – Club Reveal 8pm." Voronina appears as the model on the right hand side of the advertisement.

67.     Both images of Voronina were used without Voronina's consent and to intentionally give the impression that Voronina was either working at Paradise Lakes or that she endorses Defendants' business and the nudist lifestyle.

68.     Voronina's images, likeness and/or identity in **Exhibit C** are being used by Defendants in various marketing and promotional mediums ("usages") such as advertising, on various social media accounts, and as coupons.

69.     Voronina has never been employed by Defendants or contracted with Defendants to participate in events at Paradise Lakes.

70.     Voronina has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

71.     Defendants never sought permission or authority to use Voronina's images, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

72.     Voronina never gave permission, or assigned, licensed or otherwise consented to Defendants using her images, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

73.     Defendants neither offered nor paid any remuneration to Voronina for the unauthorized use of her images, likeness and/or identity.

74.     Defendants' use of Voronina's images, likeness and/or identity in connection with Paradise Lakes' events impugns Voronina's character, embarrasses her, and suggests – falsely – her support for and participation in a nudist lifestyle.

75.     Upon information and belief, Defendants' improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Voronina's images in their market activities and business.  In doing so, Defendants have further damaged Voronina.

### *Plaintiff John Coulter*

76.     Coulter spent two years studying illustration on a full art scholarship at the University of Arizona and then continued his studies at the prestigious Art Center College of Design in Pasadena, California. Along with visual arts, Coulter pursued other areas of interest including performing arts, which led him to Disneyland, where he worked both, as an artist in the

entertainment art department and moonlighted as Prince Charming in the Main Street Electrical Parade. Coulter then went on to play other Disney characters. One of the highlights was playing Tarzan in the opening cast of Tarzan Rocks. His princely charm also took him to Tokyo Disneyland, where he performed many other roles.

77.     While living in California, Coulter began a modeling career that has lasted over twenty (20) years. This led him to New York and Europe where he worked with such renowned photographers as Ellen Von Unwerth and David Lachapelle. He shot a jeans campaign with Cindy Crawford and a MAC Cosmetics campaign with Mary J. Blige and Lil' Kim. He walked the runways with Naomi Campbell, Kate Moss, Marcus Schenkenberg, and Tyson Beckford and graced the packaging and ad campaigns for Joe Boxer, Fruit of the Loom, Murano, Undergear, and International Male. Coulter also appeared in television commercials with Paris Hilton, Heidi Klum, Kristen Chenoweth, and Karolina Kurkova. In addition, Coulter appeared on Tyra Bank's *America's Next Top Model* show and in a Madonna video directed by Guy Ritchie. Coulter can now be seen on Britney Spears' Blackout Album as the controversial priest and has over eleven thousand (11,000) Instagram followers.

78.     In all instances of commercial marketing and promotion of his image, likeness and/or identity by third parties, Coulter negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

79.     Coulter's image, likeness and/or identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which has been used at least one time to create the false perception that Coulter has consented or agreed to promote, advertise, market and/or endorse Paradise Lakes' lunch and drink specials to benefit Defendants' commercial interests. On December 27, 2013, Defendants uploaded Coulter's image to Paradise Lakes' Facebook page

next to the large logos of Paradise Lakes. Coulter appears as the model wearing a man's Halloween chef outfit. The image of Coulter was used to deceive the viewing public and the visiting patrons that Coulter is one of Paradise Lakes' employees, entertainers, contractors, and/or nudists.

80.     Coulter's image, likeness and/or identity in **Exhibit D** are being used by Defendants in various marketing and promotional mediums ("usages") such as advertising, on various social media accounts, and as coupons.

81.     Coulter has never been employed by Defendants or contracted with Defendants to participate in events at Paradise Lakes.

82.     Coulter has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

83.     Defendants never sought permission or authority to use Coulter's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event.

84.     Coulter never gave permission, or assigned, licensed or otherwise consented to Defendants using his image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event.

85.     Defendants neither offered nor paid any remuneration to Coulter for the unauthorized use of his image, likeness and/or identity.

86.     Defendants' use of Coulter's image, likeness and/or identity in connection with Paradise Lakes' events impugns Coulter's character, embarrasses him, and suggests – falsely – his support for and participation in a nudist lifestyle.

87.     Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Coulter's image in their market activities and business. In doing so, Defendants have further damaged Coulter.

### *Plaintiff Maysa Quy*

88.     Quy is a professional model that has done various types of modeling including beauty, fitness, commercial, and swimwear. She has worked for brands such as Sketchers Shoes, Benefit Cosmetics, CoverFX Cosmetics, Dreamgirl Lingerie, Mini Cooper USA, T-Mobile, Apple, Nike, Microsoft, and David's Bridal. Quy is currently an assistant manager at Laser Away in San Jose and San Francisco, California. Quy also works as a makeup artist at Nordstrom/Bobbi Brown Cosmetics in San Jose, California and as a personal trainer at Equinox in Palo Alto, California. Quy currently has fourteen thousand (14,000) Instagram followers, over four thousand (4,000) Twitter followers, and almost five thousand (5,000) Facebook likes.

89.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Quy negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

90.     Quy's image, likeness and/or identity are depicted in at least one photograph, enclosed as **Exhibit E** to the Complaint, which has been used at least one time to create the false perception that Quy has consented or agreed to promote, advertise, market and/or endorse Paradise Lakes' "Finally Friday" event to benefit Defendants' commercial interests. On November 8, 2013, Defendants uploaded Quy's image to Paradise Lakes' Twitter page to advertise their "Finally Friday" event as well complimentary entrance for "couples and single ladies after 5 pm." The salacious captions next to the image of Quy also provided, "Lingerie

Night in Club Reveal, Wear your Sexiest!" and "Phew, finally Friday! Check out the happenings

for tonight. #livemusic poolside, #lingerie night in #ClubReveal..FAB!" Together, the captions,

Paradise Lakes' logo, and the image of Quy were used to wrongfully imply that Quy is one of

Paradise Lakes' employees, entertainers, contractors, and/or nudists.

91.    Quy's image, likeness and/or identity in **Exhibit E** are being used by Defendants

in various marketing and promotional mediums ("usages") such as advertising, on various social

media accounts, as coupons, and for branding purposes.

92.    Quy has never been employed by Defendants or contracted with Defendants to

participate in events at Paradise Lakes.

93.    Quy has never been hired by Defendants or contracted with Defendants to

advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise

Lakes' event.

94.    Defendants never sought permission or authority to use Quy's image, likeness

and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or

any Paradise Lakes' event.

95.    Quy never gave permission, or assigned, licensed or otherwise consented to

Defendants using her image, likeness and/or identity to advertise, promote, market or endorse

Defendants' business, Paradise Lakes, or any  Paradise Lakes' event.

96.    Defendants neither offered nor paid any remuneration to Quy for the unauthorized

use of her image, likeness and/or identity.

97.    Defendants' use of Quy's image, likeness and/or identity in connection with

Paradise Lakes' event impugns Quy's character, embarrasses her, and suggests – falsely – her

support for and participation in a nudist lifestyle.

98.     Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Quy's image in their market activities and business. In doing so, Defendants have further damaged Quy.

**C.  Defendants Ignored Plaintiffs' Demand Letter that Notified Defendants of the Potential Claims Should Defendants Fail or Refuse to Comply**

99.     On December 11, 2015, Plaintiffs, through counsel, sent Defendants a demand and cease/desist letter ("Demand Letter"), enclosed herein as **Exhibit F**.

100.    The Demand Letter provided Defendants with notice of their wrongful actions and demanded that Defendants immediately cease and desist any further use of the models' images. Appended to the Demand Letter was a Preliminary Expert Report regarding image infringement which provided illustrative examples of the offending images.

101.    The Demand Letter further demanded that Defendants pay $325,000 in aggregate compensatory, or actual, single damages to compensate the models for the theft and unauthorized use of their images. The amount demanded was a significantly smaller figure than actual damages, and was equivalent to the valuation of the infringed images.  It did not include any demand fee for the tortious damages to the Plaintiffs themselves.

102.    The Demand Letter further demanded that Defendants disclose, pursuant to Section 627.4137, Florida Statutes, all insurance policy coverage information.

103.    Defendants were given thirty (30) days to satisfy the conditions set forth in the Demand Letter.

104.    Defendants failed and refused to compensate Plaintiffs for the unauthorized use of their images.

**CAUSES OF ACTION**

***Plaintiff Cielo Jean Gibson's Causes of Action***

**GIBSON COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

105.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

106.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Gibson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

107.    Defendants used Gibson's image, likeness and/or identity as described herein without authority in order to create the perception that Gibson worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities.

108.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

109.    Defendants' use of Gibson's image, likeness and/or identity to advertise, promote and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities as described in this Complaint was false and misleading.

110.    Defendants' unauthorized use of Gibson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other

things, that Gibson worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants business or Paradise Lakes' events and activities and/or that Gibson would participate in or appear at the specific events promoted in the advertisement.

111.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Paradise Lakes, as to the general quality of attendees and participants of Paradise Lakes and in its events, as well as specifically whether Gibson worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.

112.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Gibson worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Paradise Lakes, visit Paradise Lakes, and participate in events at Paradise Lakes and had a material effect and impact on the decision of members and prospective members and participants to join Paradise Lakes, visit Paradise Lakes and take part in the events at Paradise Lakes.

113.    Defendants' advertisements, promotions and marketing of Paradise Lakes and events at Paradise Lakes occur in and are targeted to interstate commerce.   Specifically, Defendants promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Paradise Lakes' events.

114.    Defendants' unauthorized use of Gibson's image, likeness and/or identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting Paradise Lakes and its activities and attracting clientele to Paradise Lakes.

115.    Defendants knew or should have known that their unauthorized use of Gibson's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

116.    Defendants' unauthorized use of Gibson's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

117.    Defendants' wrongful conduct as described herein was willful.

118.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

119.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

120.    The method and manner in which Defendants used the image of Gibson further evinces that Defendants were aware of or consciously disregarded the fact that Gibson did not consent to Defendants' use of the image to advertise Defendants' business.

121.    Defendants have caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the nudist lifestyle and activities at Paradise Lakes.

122.    Defendants' unauthorized use of Gibson's image, likeness and/or identity directly and proximately caused and continue to cause damage to Gibson in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**GIBSON COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

123.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

124.    Gibson has a statutory right of publicity under Section 540.08, Florida Statutes.

125.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

126.    Despite the clear language of Section 540.08, Defendants published Gibson's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Paradise Lakes and Paradise Lakes' event and activities.

127.   Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

128.   Defendants never sought permission or authority to use Gibson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

129.   Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

130.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Gibson's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

131.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Gibson of a property interest during the entire time period in which the unauthorized use took place.

132.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

133.   Alternatively, Defendants acted negligently towards Gibson in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

134.   Defendants have caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the nudist lifestyle and activities at Paradise Lakes.

135.    Defendants have also damaged Gibson as a direct and proximate result of their unauthorized use of Gibson's image, likeness and/or identity without compensating Gibson. Defendants' conduct has been despicable and taken in conscious disregard of Gibson's rights. Accordingly, Gibson is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Gibson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### GIBSON COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

136.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

137.    Gibson has a common law right of publicity.

138.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Gibson without express written or oral consent to such use.

139.    Defendants published, printed, displayed and/or publicly used Gibson's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Paradise Lakes and Paradise Lakes' events and activities.

140.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

141.    Defendants took these actions without Gibson's permission, consent or authority. In fact, Defendants never sought permission nor authority to use Gibson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

142.    Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

143.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Gibson's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

144.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Gibson of a property interest during the entire time period in which the unauthorized use took place.

145.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

146.    Alternatively, Defendants acted negligently towards Gibson in using and disseminating, without authority, her image, likeness and/or identity on Paradise Lakes' social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

147.    Defendants have caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the nudist lifestyle and activities at Paradise Lakes.

148.    Defendants have also damaged Gibson as a direct and proximate result of their unauthorized use of Gibson's image, likeness and/or identity without compensating Gibson.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

<u>**GIBSON COUNT IV**</u>
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

149.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

150.    Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

151.    Defendants are direct and active participants in market dealings with Gibson by using her image to advertise and promote Paradise Lakes not only to patrons of Paradise Lakes, but to the general public in interstate commerce.

152.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

153.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

154.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.    failing to obtain consent from Gibson prior to promoting Defendants' business by and through the misappropriation and use of Gibson's image, likeness and/or identity;

b.    failing to obtain authorization from Gibson prior to the publication of Gibson's image, likeness and/or identity on Paradise Lakes' social media outlets;

c.    failing to compensate Gibson for the misappropriation and use of her image, likeness and/or identity on Paradise Lakes' social media outlets;

d.    falsely representing by implication to the public that Gibson endorsed the Defendants' business, or would be present at and participate in Paradise Lakes' events; and

e.    falsely representing by implication that Gibson sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

155.    Defendants' conduct described herein was misleading.

156.    Defendants knew their unauthorized use of Gibson's image, likeness and/or identity was misleading.

157.    Defendants' unauthorized use of Gibson's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

158.    Defendants' wrongful conduct as detailed herein was willful and malicious.

159.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

160.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

161.    Alternatively, the method and manner in which Defendants used Gibson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Gibson did not consent to Defendants' use to advertise Defendants' business.

162.    Defendants have caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the nudist lifestyle and activities at Paradise Lakes.

163.    Defendants' unauthorized use of Gibson's image, likeness and/or identity directly and proximately caused damage to Gibson in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendants for actual damages, including loss of profit, attorneys' fees, interest, costs, compensatory damages, damage to professional reputation, consequential damages, statutory civil penalties under Fla. Stat. § 501.2075, and such other relief as this Court deems just and proper.

### GIBSON COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

164.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

165.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

166.    Defendants knowingly appropriated, used and disseminated Gibson's image, likeness and/or identity without authorization or consent.

167.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

168.    Defendants' misappropriation of Gibson's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Gibson of certain rights.

169.    Defendants' misconduct detailed in this Complaint denied Gibson the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

170.    Defendants' appropriation of Gibson's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

171.    Defendants' wrongful conduct as detailed herein was willful and malicious.

172.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

173.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

174.    Alternatively, the method and manner in which Defendants used Gibson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Gibson did not consent to Defendants' use in order to advertise Defendants' business.

175.    Defendants' appropriation and use of Gibson's image, likeness and/or identity without authority directly and proximately caused damage to Gibson in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## GIBSON COUNT VI
### (Unjust Enrichment against all Defendants)

176.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

177.    Gibson has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

178.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

179.    Defendants were aware that Gibson's image, likeness and/or identity were valuable.

180.    Defendants were aware of the resulting benefit from usage of Gibson's image, likeness and/or identity.

181.    Defendants have retained profits and other benefits conferred upon them by using Gibson's image, likeness and/or identity to promote and advertise Defendants' business, Paradise Lakes or Paradise Lakes' events.

182.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Gibson's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

## <u>GIBSON COUNT VII</u>
**(Unlawful Conversion against all Defendants)**

183.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

184.    Gibson is, and at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

185.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

186.    Gibson has, and for all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

187.    By their acts and conduct alleged above, Defendants have converted Gibson's property rights, including without limitation, Gibson's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

188.    Gibson is informed and believes and on such information alleges that Defendants have refused to return Gibson's property to her or pay for the deprivation of Gibson's property.

189.    As a result, Gibson has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Gibson alleges that the same are within the jurisdiction of the Court.

190.    Further, Gibson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Gibson's rights. Accordingly, Gibson is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Gibson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Gibson respectfully requests this Court to issue a judgment against Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## GIBSON COUNT VIII
### (Unfair Competition against all Defendants)

191.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

192.    Gibson is, and at all relevant times was, the exclusive owner of all rights, title, and interest in and to her image, likeness and identity and possession thereof in Florida.

193.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

194.    Gibson has not authorized or licensed Defendants to reproduce, distribute, disseminate, or otherwise exploit her image, likeness and/or identity in any manner.

195.    Defendants were not entitled to or authorized to reproduce, distribute, disseminate or otherwise exploit Gibson's image, likeness and/or identity.

196.   Gibson has expended significant time, labor, and money in the making and marketing of her image, likeness and identity. Defendants have paid nothing to Gibson for reproducing, distributing, disseminating, or otherwise exploiting Gibson's image, likeness and/or identity. Without expending any time, labor, money or marketing of their own, Defendants simply appropriated the commercial qualities, reputation, and salable properties of Gibson, including without limitation Gibson's image, likeness and/or identity, by unfairly and directly competing with Gibson's use, sale, distribution, and exploitation of her image, likeness and/or identity.

197.   In so doing, Defendants have undermined Gibson's substantial and financial investment in herself for Defendants' own commercial benefit and have commercially damaged the market value of Gibson's image, likeness and/or identity.

198.   Defendants have usurped for themselves the fruits of Gibson's popularity and fame.

199.   Defendants have profited from the results of Gibson's hard work modeling and from her portfolio and skill without having to incur any expense in relation to Gibson's image, likeness and/or identity.

200.   Furthermore, Defendants' unauthorized use of Gibson's image, likeness and/or identity has likely caused confusion, mistake, or deception as to the source, sponsorship, affiliation, or connection between Gibson and Paradise Lakes.

201.   Defendants' acts constitute unfair competition involving the misappropriation of Gibson's image, likeness and/or identity.

202.   As a direct and proximate result of Defendants' misappropriation and unfair competition, Gibson is entitled to recover all proceeds and other compensation received or to be

received by Defendants from the misappropriation and unfair competition of Gibson's image, likeness and/or identity.

203.    Gibson has been damaged and Defendants have been unjustly enriched, in an amount to be proved at trial; but Gibson alleges that the same are within the jurisdiction of the Court.

204.    Gibson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Gibson's rights. Accordingly, Gibson is entitled to an award of punitive damages against Defendants in the amount sufficient to punish and make an example of Defendants. Therefore, Gibson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72

**WHEREFORE**, Gibson respectfully requests this Court to enter a judgment against Defendants for all remedies available under a claim of unfair competition of Defendants' misappropriated image, likeness and/or identity of Gibson, including but not limited to actual damages, punitive damages according to proof, consequential damages, and further relief in law or equity as this Court deems just and proper.

### GIBSON COUNT IX
**(Fraudulent Misrepresentation against all Defendants)**

205.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

206.    Gibson is informed and believes and herein alleges that Defendants misrepresented to the public Gibson's patronage, connection, or sponsorship with Paradise Lakes for the purposes of financial gain.

207.     The misrepresentations by Defendants include, but are not limited to misrepresentations of material facts in Defendants' advertisement, which purposefully contained Paradise Lakes' logo next to the face and body of Gibson.

208.     Gibson is informed and believes and alleges that Defendants knew that Gibson was not legally connected or working at or for Defendants.

209.     Gibson is informed and believes and herein alleges that Defendants published the image, likeness and/or identity of Gibson as if she worked for or endorsed Paradise Lakes, either hosting, supporting, or appearing at an event at Paradise Lakes in order to target specific audiences and to draw in big spending clients who were/are hoping to meet Gibson.

210.     Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

211.     The misrepresentations and/or acts of fraud by Defendants were perpetuated directly and indirectly by Defendants and their sales representatives, employees, and/or agents.

212.     The misrepresentations by Defendants constitute a continuing tort.

213.     Gibson is informed and believes and herein alleges that injury resulted to herself and the general public when the public justifiably relied on Defendants' misleading advertisement and paid the membership and/or entry fees to visit Paradise Lakes on November 8, 2013 to their detriment.

214.     Gibson is entitled to restitution of the reasonable value of the benefit derived by Defendants for the unauthorized use Defendants made of Gibson's image, likeness and/or identity.

215.    As a result of Defendants' conduct, Gibson suffered damages to be determined according to proof at trial; but Gibson alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Gibson respectfully requests to enter judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## GIBSON COUNT X
**(Negligence against all Defendants)**

216.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

217.    Under the circumstances stated herein, Defendants owed a duty of care towards Gibson.

218.    Among other things, that duty included the obligation to deal with Gibson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Gibson's image, likeness and/or identity in derogation of her rights, and to not cause harm to Gibson.

219.    Defendants breached that duty by using Gibson's image, likeness and/or identity without Gibson's authorization, permission or consent.

220.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

221.    Defendants' conduct and breach as described above directly and proximately caused injury to Gibson's reputation, brand, goodwill and livelihood for which she has suffered damages. Further, Gibson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants'

conduct has been despicable and taken in conscious disregard of Gibson's rights. Accordingly, Gibson is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Gibson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Gibson respectfully requests that the Court enter judgment against Defendants for damages, including but not limited to actual damages, punitive damages according to proof, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

### GIBSON COUNT XI
**(Violation of the Respondeat Superior Doctrine against all Defendants)**

222.    Plaintiff Gibson re-alleges paragraphs 1 through 51 and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

223.    Under the circumstances stated herein, Defendants owed a duty of care towards Gibson.

224.    Among other things, that duty included the obligation to deal with Gibson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Gibson's image, likeness and/or identity in derogation of her rights, and to not cause harm to Gibson.

225.    Gibson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit A.**

226.    Defendants breached that duty by using Gibson's image, likeness and/or identity without Gibson's authorization, permission or consent.

227.    Defendants' conduct and breach as described above directly and proximately caused injury to Gibson's reputation, brand, goodwill and livelihood for which she has suffered damages.

228.    In addition, Defendants and/or their agents promulgated policies and procedures concerning the prevention of misappropriation of images, likenesses and identities. Yet, Defendants negligently failed to enforce those policies, communicate them to their employees, or to supervise their employees to ensure that these policies and both State and Federal Law were not violated.

229.    Pleading alternatively, Defendants and/or their agents failed to promulgate policies and procedures concerning the prevention of misappropriation of images, likenesses and identities and, as such, are liable to Gibson for the harm that failure caused to Gibson.

230.    More specifically, Defendants had a duty to all members of the public, namely to Gibson, to refrain from the misappropriation of her image, likeness and/or identity. Defendants violated that duty by negligent hiring, screening, retaining, supervising, and training of their employees and agents.

231.    As a result of Defendants' conduct, Gibson suffered damages to be determined according to proof at trial; but Gibson alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Dessie Mitcheson's Causes of Action*

**MITCHESON COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

232.    Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

233.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Mitcheson from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

234.    Defendants used Mitcheson's image, likeness and/or identity as described herein without authority in order to create the perception that Mitcheson worked at or was otherwise affiliated with Paradise Lakes, endorsed Paradise Lakes or Paradise Lakes' business activities, and/or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities.

235.    Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

236.    Defendants' use of Mitcheson's image, likeness and/or identity to advertise, promote and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities as described in this Complaint was false and misleading.

237.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Mitcheson worked at or was otherwise affiliated with Paradise Lakes, endorsed

Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities and/or that Mitcheson would participate in or appear at the specific events promoted in the advertisement.

238.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Paradise Lakes, as to the general quality of attendees and participants at Paradise Lakes and in its events, as well as specifically whether Mitcheson worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.

239.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Mitcheson worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Paradise Lakes, visit Paradise Lakes, and participate in events at Paradise Lakes and had a material effect and impact on the decision of members and prospective members and participants to join Paradise Lakes, visit Paradise Lakes and take part in the events at Paradise Lakes.

240.   Defendants' advertisements, promotions and marketing of Paradise Lakes and events at Paradise Lakes occur in and are targeted to interstate commerce.   Specifically,

Defendants promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Paradise Lakes' events.

241.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting Paradise Lakes and its activities and attracting clientele to Paradise Lakes.

242.    Defendants knew or should have known that their unauthorized use of Mitcheson's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

243.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

244.    Defendants' wrongful conduct as described herein was willful.

245.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

246.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

247.    The method and manner in which Defendants used the image of Mitcheson further evinces that Defendants were aware of or consciously disregarded the fact that Mitcheson did not consent to Defendants' use of the image to advertise Defendants' business.

248.     Defendants have caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the nudist lifestyle and activities at Paradise Lakes.

249.     Defendants' unauthorized use of Mitcheson's image, likeness and/or identity directly and proximately caused damage to Mitcheson in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## MITCHESON COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

250.     Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

251.     Mitcheson has a statutory right of publicity under Section 540.08, Florida Statutes.

252.     Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

253.     Despite the clear language of Section 540.08, Defendants published Mitcheson's image, likeness and/or identity on Paradise Lakes' social media outlet, among others, in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

254.     Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

255.     Defendants never sought permission nor authority to use Mitcheson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

256.     Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event or activity.

257.     Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Mitcheson's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

258.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Mitcheson of a property interest during the entire time period in which the unauthorized use took place.

259.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

260.     Alternatively, Defendants acted negligently towards Mitcheson in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

261.     Defendants have caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the nudist lifestyle and activities at Paradise Lakes.

262.     Defendants have also damaged Mitcheson as a direct and proximate result of their unauthorized use of Mitcheson's image, likeness and/or identity without compensating Mitcheson. Accordingly, Mitcheson is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Mitcheson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

<u>**MITCHESON COUNT III**</u>
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

263.     Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

264.     Mitcheson has a common law right of publicity.

265.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Mitcheson without express written or oral consent to such use.

266.     Defendants published, printed, displayed and/or publicly used Mitcheson's image, likeness and/or identity on social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Paradise Lakes and Paradise Lakes' events and activities.

267.    Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

268.    Defendants took these actions without Mitcheson's permission, consent or authority.  In fact, Defendant never sought permission or authority to use Mitcheson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event or activity.

269.    Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event or activity.

270.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Mitcheson's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

271.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Mitcheson of a property interest during the entire time period in which the unauthorized use took place.

272.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

273.    Alternatively, Defendant acted negligently towards Mitcheson in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

274.    Defendants have caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the nudist lifestyle and activities at Paradise Lakes.

275.    Defendants have also damaged Mitcheson as a direct and proximate result of their unauthorized use of Mitcheson's image, likeness and/or identity without compensating Mitcheson.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

**MITCHESON COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

276.    Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

277.    Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

278.    Defendants are direct and active participants in market dealings with Mitcheson by using her image to advertise and promote Paradise Lakes not only to patrons of Paradise Lakes, but to the general public in interstate commerce.

279.    Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

280.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

281.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Mitcheson prior to promoting Defendants' business by and through the misappropriation and use of Mitcheson's image, likeness and/or identity;

b.      failing to obtain authorization from Mitcheson prior to the publication of Mitcheson's image, likeness and/or identity on Paradise Lakes' social media;

c.      failing to compensate Mitcheson for the misappropriation and use of her image, likeness and/or identity on Paradise Lakes' social media;

d.      falsely representing by implication to the public that Mitcheson endorsed the Defendants' business, or would be present at and participate in Paradise Lakes' events; and

e.      falsely representing by implication that Mitcheson sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

282.    Defendants' conduct described herein was misleading.

283.    Defendants knew their unauthorized use of Mitcheson's image, likeness and/or identity was misleading.

284.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

285.    Defendants' wrongful conduct as detailed herein was willful and malicious.

286.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

287.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

288.    Alternatively, the method and manner in which Defendants used Mitcheson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Mitcheson did not consent to Defendants' use to advertise Defendants' business.

289.    Defendants have caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the nudist lifestyle and activities at Paradise Lakes.

290.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity directly and proximately caused damage to Mitcheson in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for actual damages, including loss of profit, attorneys' fees, interest, costs, compensatory damages, damage to professional reputation, consequential damages, statutory civil penalties under Fla. Stat. § 501.2075, and such other relief as this Court deems just and proper.

### MITCHESON COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

291.    Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

292.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

293.    Defendants knowingly appropriated, used and disseminated Mitcheson's image, likeness and/or identity without authorization or consent.

294.    Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

295.    Defendants' misappropriation of Mitcheson's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Mitcheson of certain rights.

296.    Defendants' misconduct detailed in this Complaint denied Mitcheson the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

297.    Defendants' appropriation of Mitcheson's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

298.    Defendants' wrongful conduct as detailed herein was willful and malicious.

299.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

300.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

301.    Alternatively, the method and manner in which Defendants used Mitcheson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Mitcheson did not consent to Defendants' use in order to advertise Defendants' business.

302.    Defendants' appropriation and use of Mitcheson's image, likeness and/or identity without authority directly and proximately caused damage to Mitcheson in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## MITCHESON COUNT VI
### (Unjust Enrichment against all Defendants)

303.    Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

304.    Mitcheson has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

305.    Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

306.    Defendants were aware that Mitcheson's image, likeness and/or identity were valuable.

307.    Defendants were aware of the resulting benefit from usage of Mitcheson's image, likeness and/or identity.

308.    Defendants have retained profits and other benefits conferred upon them by using Mitcheson's image, likeness and/or identity to promote and advertise Defendants' business, Paradise Lakes or Paradise Lakes' events.

309.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Mitcheson's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

## MITCHESON COUNT VII
### (Unlawful Conversion against all Defendants)

310.   Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

311.   Mitcheson is, and at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

312.   Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

313.   Mitcheson has, and for all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

314.   By their acts and conduct alleged above, Defendants have converted Mitcheson's property rights, including without limitation, Mitcheson's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

315.   Mitcheson is informed and believes and on such information alleges that Defendants have refused to return Mitcheson's property to her or pay for the deprivation of Mitcheson's property.

316.     As a result, Mitcheson has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Mitcheson alleges that the same are within the jurisdiction of the Court.

317.     Further, Mitcheson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Mitcheson's rights. Accordingly, Mitcheson is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Mitcheson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Mitcheson respectfully requests this Court to issue a judgment against Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## MITCHESON COUNT VIII
### (Unfair Competition against all Defendants)

318.     Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

319.     Mitcheson is, and at all relevant times was, the exclusive owner of all rights, title, and interest in and to her image, likeness and identity and possession thereof in Florida.

320.     Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

321.     Mitcheson has not authorized or licensed Defendants to reproduce, distribute, disseminate, or otherwise exploit her image, likeness and/or identity in any manner.

322.     Defendants were not entitled to or authorized to reproduce, distribute, disseminate or otherwise exploit Mitcheson's image, likeness and/or identity.

323.     Mitcheson has expended significant time, labor, and money in the making and marketing of her image, likeness and identity. Defendants have paid nothing to Mitcheson for reproducing, distributing, disseminating, or otherwise exploiting Mitcheson's image, likeness and/or identity. Without expending any time, labor, money or marketing of their own, Defendants simply appropriated the commercial qualities, reputation, and salable properties of Mitcheson, including without limitation Mitcheson's image, likeness and/or identity, by unfairly and directly competing with Mitcheson's use, sale, distribution, and exploitation of her image, likeness and/or identity.

324.     In so doing, Defendants have undermined Mitcheson's substantial and financial investment in herself for Defendants' own commercial benefit and have commercially damaged the market value of Mitcheson's image, likeness and/or identity.

325.     Defendants have usurped for themselves the fruits of Mitcheson's popularity and fame.

326.     Defendants have profited from the results of Mitcheson's hard work modeling and from her portfolio and skill without having to incur any expense in relation to Mitcheson's image, likeness and/or identity.

327.     Furthermore, Defendants' unauthorized use of Mitcheson's image, likeness and/or identity has likely caused confusion, mistake, or deception as to the source, sponsorship, affiliation, or connection between Mitcheson and Paradise Lakes.

328.     Defendants' acts constitute unfair competition involving the misappropriation of Mitcheson's image, likeness and/or identity.

329.    As a direct and proximate result of Defendants' misappropriation and unfair competition, Mitcheson is entitled to recover all proceeds and other compensation received or to be received by Defendants from the misappropriation and unfair competition of Mitcheson's image, likeness and/or identity.

330.    Mitcheson has been damaged and Defendants have been unjustly enriched, in an amount to be proved at trial; but Mitcheson alleges that the same are within the jurisdiction of the Court.

331.    Mitcheson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Mitcheson's rights. Accordingly, Mitcheson is entitled to an award of punitive damages against Defendants in the amount sufficient to punish and make an example of Defendants. Therefore, Mitcheson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72

**WHEREFORE**, Mitcheson respectfully requests this Court to enter a judgment against Defendants for all remedies available under a claim of unfair competition of Defendants' misappropriated image, likeness and/or identity of Mitcheson, including but not limited to actual damages, punitive damages according to proof, consequential damages, and further relief in law or equity as this Court deems just and proper.

## MITCHESON COUNT IX
### (Fraudulent Misrepresentation against all Defendants)

332.    Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

333.   Mitcheson is informed and believes and herein alleges that Defendants misrepresented to the public Mitcheson's patronage, connection, or sponsorship with Paradise Lakes for the purposes of financial gain.

334.   The misrepresentations by Defendants include, but are not limited to misrepresentations of material facts in Defendants' advertisement, which purposefully contained Paradise Lakes' hushtags such as #RepealDay next to the face and body of Mitcheson.

335.   Mitcheson is informed and believes and alleges that Defendants knew that Mitcheson was not legally connected or working at or for Defendants.

336.   Mitcheson is informed and believes and herein alleges that Defendants published the image, likeness and/or identity of Mitcheson as if she worked for or endorsed Paradise Lakes, either hosting, supporting, or appearing at an event at Paradise Lakes in order to target specific audiences and to draw in big spending clients who were/are hoping to meet Mitcheson.

337.   Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

338.   The misrepresentations and/or acts of fraud by Defendants were perpetuated directly and indirectly by Defendants and their sales representatives, employees, and/or agents.

339.   The misrepresentations by Defendants constitute a continuing tort.

340.   Mitcheson is informed and believes and herein alleges that injury resulted to herself and the general public when the public justifiably relied on Defendants' misleading advertisement and paid the membership and/or entry fees to visit Paradise Lakes on December 5, 2013 to their detriment.

341.     Mitcheson is entitled to restitution of the reasonable value of the benefit derived by Defendants for the unauthorized use Defendants made of Mitcheson's image, likeness and/or identity.

342.     As a result of Defendants' conduct, Mitcheson suffered damages to be determined according to proof at trial; but Mitcheson alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Mitcheson respectfully requests to enter judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## MITCHESON COUNT X
### (Negligence against all Defendants)

343.     Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

344.     Under the circumstances stated herein, Defendants owed a duty of care towards Mitcheson.

345.     Among other things, that duty included the obligation to deal with Mitcheson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Mitcheson's image, likeness and/or identity in derogation of her rights, and to not cause harm to Mitcheson.

346.     Defendants breached that duty by using Mitcheson's image, likeness and/or identity without Mitcheson's authorization, permission or consent.

347.     Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

348.    Defendants' conduct and breach as described above directly and proximately caused injury to Mitcheson's reputation, brand, goodwill and livelihood for which she has suffered damages. Further, Mitcheson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Mitcheson's rights. Accordingly, Mitcheson is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Mitcheson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Mitcheson respectfully requests that the Court enter judgment against Defendants for damages, including but not limited to actual damages, punitive damages according to proof, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## MITCHESON COUNT XI
### (Violation of the Respondeat Superior Doctrine against all Defendants)

349.    Plaintiff Mitcheson re-alleges paragraphs 1 through 40, 52 through 62, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

350.    Under the circumstances stated herein, Defendants owed a duty of care towards Mitcheson.

351.    Among other things, that duty included the obligation to deal with Mitcheson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Mitcheson's image, likeness and/or identity in derogation of her rights, and to not cause harm to Mitcheson.

352.   Mitcheson's image, likeness and/or identity are recognizable in the photo identified in **Exhibit B.**

353.   Defendants breached that duty by using Mitcheson's image, likeness and/or identity without Mitcheson's authorization, permission or consent.

354.   Defendants' conduct and breach as described above directly and proximately caused injury to Mitcheson's reputation, brand, goodwill and livelihood for which she has suffered damages.

355.   In addition, Defendants and/or their agents promulgated policies and procedures concerning the prevention of misappropriation of images, likenesses and identities. Yet, Defendants negligently failed to enforce those policies, communicate them to their employees, or to supervise their employees to ensure that these policies and both State and Federal Law were not violated.

356.   Pleading alternatively, Defendants and/or their agents failed to promulgate policies and procedures concerning the prevention of misappropriation of images, likenesses and identities and, as such, are liable to Mitcheson for the harm that failure caused to Mitcheson.

357.   More specifically, Defendants had a duty to all members of the public, namely to Mitcheson, to refrain from the misappropriation of her image, likeness and/or identity. Defendants violated that duty by negligent hiring, screening, retaining, supervising, and training of their employees and agents.

358.   As a result of Defendants' conduct, Mitcheson suffered damages to be determined according to proof at trial; but Mitcheson alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Irina Voronina's Causes of Action*

<u>VORONINA COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):
False Advertising against all Defendants**)

359.    Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

360.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Voronina from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

361.    Defendants used Voronina's images, likeness and/or identity as described herein without authority in order to create the perception that Voronina worked at or was otherwise affiliated with Paradise Lakes, endorsed Paradise Lakes or Paradise Lakes' business activities, and/or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities.

362.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

363.   Defendants' use of Voronina's images, likeness and/or identity to advertise, promote and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities as described in this Complaint was false and misleading.

364.   Defendants' unauthorized use of Voronina's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Voronina worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities and/or that Voronina would participate in or appear at the specific events promoted in the advertisements.

365.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Paradise Lakes, as to the general quality of attendees and participants at Paradise Lakes and in its events, as well as specifically whether Voronina worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.

366.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Voronina worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events and activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.  Among other things, upon information and belief, such unauthorized use

misled and served to entice consumers and prospective consumers to join Paradise Lakes, visit Paradise Lakes, and participate in events at Paradise Lakes and had a material effect and impact on the decision of members and prospective members and participants to join Paradise Lakes, visit Paradise Lakes and take part in the events at Paradise Lakes.

367.    Defendants' advertisements, promotions and marketing of Paradise Lakes and events at Paradise Lakes occur in and are targeted to interstate commerce.   Specifically, Defendants promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Paradise Lakes' events.

368.    Defendants' unauthorized use of Voronina's images, likeness and/or identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting Paradise Lakes and its activities and attracting clientele to Paradise Lakes.

369.    Defendants knew or should have known that their unauthorized use of Voronina's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

370.    Defendants' unauthorized use of Voronina's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

371.    Defendants' wrongful conduct as described herein was willful.

372.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

373.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with

actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

374.   The method and manner in which Defendants used the images of Voronina further evinces that Defendants were aware of or consciously disregarded the fact that Voronina did not consent to Defendants' use of the images to advertise Defendants' business.

375.   Defendants have caused irreparable harm to Voronina, her reputation and brand by attributing to Voronina the nudist lifestyle and activities at Paradise Lakes.

376.   Defendants' unauthorized use of Voronina's images, likeness and/or identity directly and proximately caused damage to Voronina in an amount to be determined at trial.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**VORONINA COUNT II**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

377.   Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

378.   Voronina has a statutory right of publicity under Section 540.08, Florida Statutes.

379.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

380.    Despite the clear language of Section 540.08, Defendants published Voronina's images, likeness and/or identity on Paradise Lakes' social media outlet, among others, in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

381.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

382.    Defendants never sought permission or authority to use Voronina's images, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

383.    Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

384.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Voronina's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

385.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Voronina of a property interest during the entire time period in which the unauthorized use took place.

386.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

387.    Alternatively, Defendants acted negligently towards Voronina in using and disseminating, without authority, her images, likeness and/or identity on social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

388.    Defendants have caused irreparable harm to Voronina, her reputation and brand by attributing to Voronina the nudist lifestyle and activities at Paradise Lakes.

389.    Defendants have also damaged Voronina as a direct and proximate result of their unauthorized use of Voronina's images, likeness and/or identity without compensating Voronina. Defendants' conduct has been despicable and taken in conscious disregard of Voronina's rights. Accordingly, Voronina is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Voronina reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

<u>**VORONINA COUNT III**</u>
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants**)

390.    Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

391.    Voronina has a common law right of publicity.

392.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Voronina without express written or oral consent to such use.

393.    Defendants published, printed, displayed and/or publicly used Voronina's images, likeness and/or identity on social media outlets, among others, for purposes of trade and/or

commercial advertising including, but not limited to, promoting, advertising and marketing Paradise Lakes and Paradise Lakes' events and activities.

394.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

395.    Defendants took these actions without Voronina's permission, consent or authority.  In fact, Defendant never sought permission or authority to use Voronina's images, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event or activity.

396.    Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event or activity.

397.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Voronina's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

398.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Voronina of a property interest during the entire time period in which the unauthorized use took place.

399.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

400.    Alternatively, Defendant acted negligently towards Voronina in using and disseminating, without authority, her images, likeness and/or identity on social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

401.    Defendants have caused irreparable harm to Voronina, her reputation and brand by attributing to Voronina the nudist lifestyle and activities at Paradise Lakes.

402.    Defendants have also damaged Voronina as a direct and proximate result of their unauthorized use of Voronina's images, likeness and/or identity without compensating Voronina.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### VORONINA COUNT IV
**(Violation of Fla. Stat. § 501.204: Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

403.    Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

404.    Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

405.    Defendants are direct and active participants in market dealings with Voronina by using her images to advertise and promote Paradise Lakes not only to patrons of Paradise Lakes, but to the general public in interstate commerce.

406.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

407.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

408.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.    failing to obtain consent from Voronina prior to promoting Defendants' business by and through the misappropriation and use of Voronina's images, likeness and/or identity;

b.    failing to obtain authorization from Voronina prior to the publication of Voronina's images, likeness and/or identity on Paradise Lakes' social media;

c.    failing to compensate Voronina for the misappropriation and use of her images, likeness and/or identity on Paradise Lakes' social media;

d.    falsely representing by implication to the public that Voronina endorsed the Defendants' business, or would be present at and participate in Paradise Lakes' events; and

e.    falsely representing by implication that Voronina sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

409.    Defendants' conduct described herein was misleading.

410.    Defendants knew their unauthorized use of Voronina's images, likeness and/or identity was misleading.

411.    Defendants' unauthorized use of Voronina's images, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes and was wrongful.

412.    Defendants' wrongful conduct as detailed herein was willful and malicious.

413.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with

actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

414.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

415.   Alternatively, the method and manner in which Defendants used Voronina's images, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Voronina did not consent to Defendants' use to advertise Defendants' business.

416.   Defendants have caused irreparable harm to Voronina, her reputation and brand by attributing to Voronina the nudist lifestyle and activities at Paradise Lakes.

417.   Defendants' unauthorized use of Voronina's images, likeness and/or identity directly and proximately caused damage to Voronina in an amount to be determined at trial.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendants for actual damages, including loss of profit, attorneys' fees, interest, costs, compensatory damages, damage to professional reputation, consequential damages, statutory civil penalties under Fla. Stat. § 501.2075, and such other relief as this Court deems just and proper.

### VORONINA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

418.   Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

419.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

420.    Defendants knowingly appropriated, used and disseminated Voronina's images, likeness and/or identity without authorization or consent.

421.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

422.    Defendants' misappropriation of Voronina's images, likeness and/or identity was for Defendants' own use and benefit and to deprive Voronina of certain rights.

423.    Defendants' misconduct detailed in this Complaint denied Voronina the right to engage in arms-length negotiations over the use and dissemination of her images, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her images, likeness and/or identity from harm at the hands of Defendants.

424.    Defendants' appropriation of Voronina's images, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

425.    Defendants' wrongful conduct as detailed herein was willful and malicious.

426.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

427.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

428.    Alternatively, the method and manner in which Defendants used Voronina's images, likeness and/or identity further evinces that Defendants were aware or consciously

disregarded the fact that Voronina did not consent to Defendants' use in order to advertise Defendants' business.

429.    Defendants' appropriation and use of Voronina's images, likeness and/or identity without authority directly and proximately caused damage to Voronina in an amount to be determined at trial.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## VORONINA COUNT VI
### (Unjust Enrichment against all Defendants)

430.    Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

431.    Voronina has conferred a benefit upon Defendants by virtue of Defendants' usage of her images without compensation.

432.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

433.    Defendants were aware that Voronina's images, likeness and/or identity were valuable.

434.    Defendants were aware of the resulting benefit from usage of Voronina's images, likeness and/or identity.

435.    Defendants have retained profits and other benefits conferred upon them by using Voronina's images, likeness and/or identity to promote and advertise Defendants' business, Paradise Lakes or Paradise Lakes' events.

436.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Voronina's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

## VORONINA COUNT VII
### (Unlawful Conversion against all Defendants)

437.    Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

438.    Voronina is, and at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

439.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

440.    Voronina has, and for all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

441.    By their acts and conduct alleged above, Defendants have converted Voronina's property rights, including without limitation, Voronina's images, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

442.    Voronina is informed and believes and on such information alleges that Defendants have refused to return Voronina's property to her or pay for the deprivation of Voronina's property.

443.    As a result, Voronina has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Voronina alleges that the same are within the jurisdiction of the Court.

444.    Further, Voronina is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Voronina's rights. Accordingly, Voronina is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Voronina reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Voronina respectfully requests this Court to issue a judgment against Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

<u>VORONINA COUNT VIII</u>
**(Unfair Competition against all Defendants)**

445.    Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

446.    Voronina is, and at all relevant times was, the exclusive owner of all rights, title, and interest in and to her images, likeness and identity and possession thereof in Florida.

447.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

448.    Voronina has not authorized or licensed Defendants to reproduce, distribute, disseminate, or otherwise exploit her images, likeness and/or identity in any manner.

449.     Defendants were not entitled to or authorized to reproduce, distribute, disseminate or otherwise exploit Voronina's images, likeness and/or identity.

450.     Voronina has expended significant time, labor, and money in the making and marketing of her images, likeness and identity. Defendants have paid nothing to Voronina for reproducing, distributing, disseminating, or otherwise exploiting Voronina's images, likeness and/or identity. Without expending any time, labor, money or marketing of their own, Defendants simply appropriated the commercial qualities, reputation, and salable properties of Voronina, including without limitation Voronina's images, likeness and/or identity, by unfairly and directly competing with Voronina's use, sale, distribution, and exploitation of her images, likeness and/or identity.

451.     In so doing, Defendants have undermined Voronina's substantial and financial investment in herself for Defendants' own commercial benefit and have commercially damaged the market value of Voronina's images, likeness and/or identity.

452.     Defendants have usurped for themselves the fruits of Voronina's popularity and fame.

453.     Defendants have profited from the results of Voronina's hard work modeling and from her portfolio and skill without having to incur any expense in relation to Voronina's images, likeness and/or identity.

454.     Furthermore, Defendants' unauthorized use of Voronina's images, likeness and/or identity has likely caused confusion, mistake, or deception as to the source, sponsorship, affiliation, or connection between Voronina and Paradise Lakes.

455.     Defendants' acts constitute unfair competition involving the misappropriation of Voronina's images, likeness and/or identity.

456.   As a direct and proximate result of Defendants' misappropriation and unfair competition, Voronina is entitled to recover all proceeds and other compensation received or to be received by Defendants from the misappropriation and unfair competition of Voronina's images, likeness and/or identity.

457.   Voronina has been damaged and Defendants have been unjustly enriched, in an amount to be proved at trial; but Voronina alleges that the same are within the jurisdiction of the Court.

458.   Voronina is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Voronina's rights. Accordingly, Voronina is entitled to an award of punitive damages against Defendants in the amount sufficient to punish and make an example of Defendants. Therefore, Voronina reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72

**WHEREFORE**, Voronina respectfully requests this Court to enter a judgment against Defendants for all remedies available under a claim of unfair competition of Defendants' misappropriated image, likeness and/or identity of Voronina, including but not limited to actual damages, punitive damages according to proof, consequential damages, and further relief in law or equity as this Court deems just and proper.

## <u>VORONINA COUNT IX</u>
### (Fraudulent Misrepresentation against all Defendants)

459.   Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

460.    Voronina is informed and believes and herein alleges that Defendants misrepresented to the public Voronina's patronage, connection, or sponsorship with Paradise Lakes for the purposes of financial gain.

461.    The misrepresentations by Defendants include, but are not limited to misrepresentations of material facts in Defendants' advertisement, which purposefully contained Paradise Lakes' hushtags such as #HalloweenCostumes next to the face and body of Voronina.

462.    Voronina is informed and believes and alleges that Defendants knew that Voronina was not legally connected or working at or for Defendants.

463.    Voronina is informed and believes and herein alleges that Defendants published the images, likeness and/or identity of Voronina as if she worked for or endorsed Paradise Lakes, either hosting, supporting, or appearing at events at Paradise Lakes in order to target specific audiences and to draw in big spending clients who were/are hoping to meet Voronina.

464.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

465.    The misrepresentations and/or acts of fraud by Defendants were perpetuated directly and indirectly by Defendants and their sales representatives, employees, and/or agents.

466.    The misrepresentations by Defendants constitute a continuing tort.

467.    Voronina is informed and believes and herein alleges that injury resulted to herself and the general public when the public justifiably relied on Defendants' misleading advertisement and paid the membership and/or entry fees to visit Paradise Lakes on November 1, 2014 and August 15, 2015 to their detriment.

468.    Voronina is entitled to restitution of the reasonable value of the benefit derived by Defendants for the unauthorized use Defendants made of Voronina's images, likeness and/or identity.

469.    As a result of Defendants' conduct, Voronina suffered damages to be determined according to proof at trial; but Voronina alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Voronina respectfully requests to enter judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## VORONINA COUNT X
### (Negligence against all Defendants)

470.    Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

471.    Under the circumstances stated herein, Defendants owed a duty of care towards Voronina.

472.    Among other things, that duty included the obligation to deal with Voronina and her images, likeness and/or identity in a commercially reasonable and prudent manner, to not use Voronina's images, likeness and/or identity in derogation of her rights, and to not cause harm to Voronina.

473.    Defendants breached that duty by using Voronina's images, likeness and/or identity without Voronina's authorization, permission or consent.

474.    Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

475.   Defendants' conduct and breach as described above directly and proximately caused injury to Voronina's reputation, brand, goodwill and livelihood for which she has suffered damages. Further, Voronina is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Voronina's rights. Accordingly, Voronina is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Voronina reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Voronina respectfully requests that the Court enter judgment against Defendants for damages, including but not limited to actual damages, punitive damages according to proof, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

<u>**VORONINA COUNT XI**</u>
**(Violation of the Respondeat Superior Doctrine against all Defendants)**

476.   Plaintiff Voronina re-alleges paragraphs 1 through 40, 63 through 75, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

477.   Under the circumstances stated herein, Defendants owed a duty of care towards Voronina.

478.   Among other things, that duty included the obligation to deal with Voronina and her images, likeness and/or identity in a commercially reasonable and prudent manner, to not use Voronina's images, likeness and/or identity in derogation of her rights, and to not cause harm to Voronina.

479.   Voronina's images, likeness and/or identity are recognizable in the photos identified in **Exhibit C.**

480.    Defendants breached that duty by using Voronina's images, likeness and/or identity without Voronina's authorization, permission or consent.

481.    Defendants' conduct and breach as described above directly and proximately caused injury to Voronina's reputation, brand, goodwill and livelihood for which she has suffered damages.

482.    In addition, Defendants and/or their agents promulgated policies and procedures concerning the prevention of misappropriation of images, likenesses and identities. Yet, Defendants negligently failed to enforce those policies, communicate them to their employees, or to supervise their employees to ensure that these policies and both State and Federal Law were not violated.

483.    Pleading alternatively, Defendants and/or their agents failed to promulgate policies and procedures concerning the prevention of misappropriation of images, likenesses and identities and, as such, are liable to Voronina for the harm that failure caused to Voronina.

484.    More specifically, Defendants had a duty to all members of the public, namely to Voronina, to refrain from the misappropriation of her images, likeness and/or identity. Defendants violated that duty by negligent hiring, screening, retaining, supervising, and training of their employees and agents.

485.    As a result of Defendants' conduct, Voronina suffered damages to be determined according to proof at trial; but Voronina alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff John Coulter's Causes of Action*

**COULTER COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

486.  Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

487.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Coulter from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

488.  Defendants used Coulter's image, likeness and/or identity as described herein without authority in order to create the perception that Coulter worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business and activities, and/or consented to or authorized Defendants to use his image in order to advertise, promote, and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities.

489.  Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

490.  Defendants' use of Coulter's image, likeness and/or identity to advertise, promote and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities as described in this Complaint was false and misleading.

491.  Defendants' unauthorized use of Coulter's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Coulter worked at or was otherwise affiliated with Paradise Lakes, endorsed

Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of his image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities and/or that Coulter would participate in or appear at the specific events promoted in the advertisement.

492.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Paradise Lakes, as to the general quality of attendees and participants of Paradise Lakes and in its events, as well as specifically whether Coulter worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of his image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.

493.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Coulter worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events and activities, or consented to or authorized Defendants' usage of his image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Paradise Lakes, visit Paradise Lakes, and participate in events at Paradise Lakes and had a material effect and impact on the decision of members and prospective members and participants to join Paradise Lakes, visit Paradise Lakes and take part in the events at Paradise Lakes.

494.    Defendants' advertisements, promotions and marketing of Paradise Lakes and events at Paradise Lakes occur in and are targeted to interstate commerce.   Specifically,

Defendants promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Paradise Lakes' events.

495.    Defendants' unauthorized use of Coulter's image, likeness and/or identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting Paradise Lakes and its activities and attracting clientele to Paradise Lakes.

496.    Defendants knew or should have known that their unauthorized use of Coulter's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

497.    Defendants' unauthorized use of Coulter's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

498.    Defendants' wrongful conduct as described herein was willful.

499.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

500.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Coulter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter.

501.    The method and manner in which Defendants used the image of Coulter further evinces that Defendants were aware of or consciously disregarded the fact that Coulter did not consent to Defendants' use of the image to advertise Defendants' business.

502.    Defendants have caused irreparable harm to Coulter, his reputation and brand by attributing to Coulter the nudist lifestyle and activities at Paradise Lakes.

503.    Defendants' unauthorized use of Coulter's image, likeness and/or identity directly and proximately caused and continue to cause damage to Coulter in an amount to be determined at trial.

**WHEREFORE**, Coulter respectfully requests that the Court issue a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**COULTER COUNT II**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against all Defendants)**

504.    Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

505.    Coulter has a statutory right of publicity under Section 540.08, Florida Statutes.

506.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

507.    Despite the clear language of Section 540.08, Defendants published Coulter's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Paradise Lakes and Paradise Lakes' event and activities.

508.    Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

509.    Defendants never sought permission or authority to use Coulter's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

510.    Coulter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of his image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event or activity.

511.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Coulter's image, likeness and/or identity without his express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

512.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Coulter of a property interest during the entire time period in which the unauthorized use took place.

513.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

514.    Alternatively, Defendants acted negligently towards Coulter in using and disseminating, without authority, his image, likeness and/or identity on social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

515.    Defendants have caused irreparable harm to Coulter, his reputation and brand by attributing to Coulter the nudist lifestyle and activities at Paradise Lakes.

516.    Defendants have also damaged Coulter as a direct and proximate result of their unauthorized use of Coulter's image, likeness and/or identity without compensating Coulter. Defendants' conduct has been despicable and taken in conscious disregard of Coulter's rights.

Accordingly, Coulter is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Coulter reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Coulter respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## COULTER COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

517.    Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

518.    Coulter has a common law right of publicity.

519.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Coulter without express written or oral consent to such use.

520.    Defendants published, printed, displayed and/or publicly used Coulter's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Paradise Lakes and Paradise Lakes' events and activities.

521.    Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

522.    Defendants took these actions without Coulter's permission, consent or authority. In fact, Defendants never sought permission nor authority to use Coulter's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes, or any Paradise Lakes' event or activity.

523.    Coulter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of his image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

524.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Coulter's image, likeness and/or identity without his express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

525.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Coulter of a property interest during the entire time period in which the unauthorized use took place.

526.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

527.    Alternatively, Defendants acted negligently towards Coulter in using and disseminating, without authority, his image, likeness and/or identity on Paradise Lakes' social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

528.    Defendants have caused irreparable harm to Coulter, his reputation and brand by attributing to Coulter the nudist lifestyle and activities at Paradise Lakes.

529.   Defendants have also damaged Coulter as a direct and proximate result of their unauthorized use of Coulter's image, likeness and/or identity without compensating Coulter.

**WHEREFORE**, Coulter respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

<u>**COULTER COUNT IV**</u>
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

530.   Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

531.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

532.   Defendants are direct and active participants in market dealings with Coulter by using his image to advertise and promote Paradise Lakes not only to patrons of Paradise Lakes, but to the general public in interstate commerce.

533.   Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

534.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

535.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Coulter prior to promoting Defendants' business by and through the misappropriation and use of Coulter's image, likeness and/or identity;

b.      failing to obtain authorization from Coulter prior to the publication of Coulter's image, likeness and/or identity on Paradise Lakes' social media outlets;

c.      failing to compensate Coulter for the misappropriation and use of his image, likeness and/or identity on Paradise Lakes' social media outlets;

d.      falsely representing by implication to the public that Coulter endorsed the Defendants' business, or would be present at and participate in Paradise Lakes' events; and

e.      falsely representing by implication that Coulter sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

536.    Defendants' conduct described herein was misleading.

537.    Defendants knew their unauthorized use of Coulter's image, likeness and/or identity was misleading.

538.    Defendants' unauthorized use of Coulter's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

539.    Defendants' wrongful conduct as detailed herein was willful and malicious.

540.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Coulter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter.

541.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

542.     Alternatively, the method and manner in which Defendants used Coulter's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Coulter did not consent to Defendants' use to advertise Defendants' business.

543.     Defendants have caused irreparable harm to Coulter, his reputation and brand by attributing to Coulter the nudist lifestyle and activities at Paradise Lakes.

544.     Defendants' unauthorized use of Coulter's image, likeness and/or identity directly and proximately caused damage to Coulter in an amount to be determined at trial.

**WHEREFORE**, Coulter respectfully requests that the Court issue a judgment against Defendants for actual damages, including loss of profit, attorneys' fees, interest, costs, compensatory damages, damage to professional reputation, consequential damages, statutory civil penalties under Fla. Stat. § 501.2075, and such other relief as this Court deems just and proper.

## <u>COULTER COUNT V</u>
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

545.     Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

546.     Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

547.     Defendants knowingly appropriated, used and disseminated Coulter's image, likeness and/or identity without authorization or consent.

548.     Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

549.     Defendants' misappropriation of Coulter's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Coulter of certain rights.

550.     Defendants' misconduct detailed in this Complaint denied Coulter the right to engage in arms-length negotiations over the use and dissemination of his image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect his image, likeness and/or identity from harm at the hands of the Defendants.

551.     Defendants' appropriation of Coulter's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

552.     Defendants' wrongful conduct as detailed herein was willful and malicious.

553.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Coulter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter.

554.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

555.     Alternatively, the method and manner in which Defendants used Coulter's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Coulter did not consent to Defendants' use in order to advertise Defendants' business.

556.     Defendants' appropriation and use of Coulter's image, likeness and/or identity without authority directly and proximately caused damage to Coulter in an amount to be determined at trial.

**WHEREFORE**, Coulter respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## COULTER COUNT VI
### (Unjust Enrichment against all Defendants)

557.    Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

558.    Coulter has conferred a benefit upon Defendants by virtue of Defendants' usage of his image without compensation.

559.    Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

560.    Defendants were aware that Coulter's image, likeness and/or identity were valuable.

561.    Defendants were aware of the resulting benefit from usage of Coulter's image, likeness and/or identity.

562.    Defendants have retained profits and other benefits conferred upon them by using Coulter's image, likeness and/or identity to promote and advertise Defendants' business, Paradise Lakes, or Paradise Lakes' events.

563.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Coulter's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Coulter respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, imposition

of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

## COULTER COUNT VII
### (Unlawful Conversion against all Defendants)

564.    Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

565.    Coulter is, and at relevant times was, the exclusive owner of all rights, title, and interest to his image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

566.    Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

567.    Coulter has, and for all times relevant herein had, an intangible property interest in his image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

568.    By their acts and conduct alleged above, Defendants have converted Coulter's property rights, including without limitation, Coulter's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

569.    Coulter is informed and believes and on such information alleges that Defendants have refused to return Coulter's property to him or pay for the deprivation of Coulter's property.

570.    As a result, Coulter has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Coulter alleges that the same are within the jurisdiction of the Court.

571.    Further, Coulter is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice.

Defendants' conduct has been despicable and taken in conscious disregard of Coulter's rights. Accordingly, Coulter is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Coulter reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Coulter respectfully requests this Court to issue a judgment against Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

### COULTER COUNT VIII
**(Unfair Competition against all Defendants)**

572.    Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

573.    Coulter is, and at all relevant times was, the exclusive owner of all rights, title, and interest in and to his image, likeness and identity and possession thereof in Florida.

574.    Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

575.    Coulter has not authorized or licensed Defendants to reproduce, distribute, disseminate, or otherwise exploit his image, likeness and/or identity in any manner.

576.    Defendants were not entitled to or authorized to reproduce, distribute, disseminate or otherwise exploit Coulter's image, likeness and/or identity.

577.    Coulter has expended significant time, labor, and money in the making and marketing of his image, likeness and identity. Defendants have paid nothing to Coulter for reproducing, distributing, disseminating, or otherwise exploiting Coulter's image, likeness and/or

identity. Without expending any time, labor, money or marketing of their own, Defendants simply appropriated the commercial qualities, reputation, and salable properties of Coulter, including without limitation Coulter's image, likeness and/or identity, by unfairly and directly competing with Coulter's use, sale, distribution, and exploitation of his image, likeness and/or identity.

578.     In so doing, Defendants have undermined Coulter's substantial and financial investment in himself for Defendants' own commercial benefit and have commercially damaged the market value of Coulter's image, likeness and/or identity.

579.     Defendants have usurped for themselves the fruits of Coulter's popularity and fame.

580.     Defendants have profited from the results of Coulter's hard work modeling and from his portfolio and skill without having to incur any expense in relation to Coulter's image, likeness and/or identity.

581.     Furthermore, Defendants' unauthorized use of Coulter's image, likeness and/or identity has likely caused confusion, mistake, or deception as to the source, sponsorship, affiliation, or connection between Coulter and Paradise Lakes.

582.     Defendants' acts constitute unfair competition involving the misappropriation of Coulter's image, likeness and/or identity.

583.     As a direct and proximate result of Defendants' misappropriation and unfair competition, Coulter is entitled to recover all proceeds and other compensation received or to be received by Defendants from the misappropriation and unfair competition of Coulter's image, likeness and/or identity.

584.    Coulter has been damaged and Defendants have been unjustly enriched, in an amount to be proved at trial; but Coulter alleges that the same are within the jurisdiction of the Court.

585.    Coulter is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Coulter's rights. Accordingly, Coulter is entitled to an award of punitive damages against Defendants in the amount sufficient to punish and make an example of Defendants. Therefore, Coulter reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72

**WHEREFORE**, Coulter respectfully requests this Court to enter a judgment against Defendants for all remedies available under a claim of unfair competition of Defendants' misappropriated image, likeness and/or identity of Coulter, including but not limited to actual damages, punitive damages according to proof, consequential damages, and further relief in law or equity as this Court deems just and proper.

## COULTER COUNT IX
### (Fraudulent Misrepresentation against all Defendants)

586.    Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

587.    Coulter is informed and believes and herein alleges that Defendants misrepresented to the public Coulter's patronage, connection, or sponsorship with Paradise Lakes for the purposes of financial gain.

588.    The misrepresentations by Defendants include, but are not limited to misrepresentations of material facts in Defendants' advertisement, which purposefully contained Paradise Lakes' logos next to the face and body of Coulter.

589.    Coulter is informed and believes and alleges that Defendants knew that Coulter was not legally connected or working at or for Defendants.

590.    Coulter is informed and believes and herein alleges that Defendants published the image, likeness and/or identity of Coulter as if he worked for or endorsed Paradise Lakes, either hosting, supporting, or appearing at an event at Paradise Lakes in order to target specific audiences and to draw in big spending clients who were/are hoping to meet Coulter.

591.    Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

592.    The misrepresentations and/or acts of fraud by Defendants were perpetuated directly and indirectly by Defendants and their sales representatives, employees, and/or agents.

593.    The misrepresentations by Defendants constitute a continuing tort.

594.    Coulter is informed and believes and herein alleges that injury resulted to himself and the general public when the public justifiably relied on Defendants' misleading advertisement and paid the membership and/or entry fees to visit Paradise Lakes on December 27, 2013 to their detriment.

595.    Coulter is entitled to restitution of the reasonable value of the benefit derived by Defendants for the unauthorized use Defendants made of Coulter's image, likeness and/or identity.

596.    As a result of Defendants' conduct, Coulter suffered damages to be determined according to proof at trial; but Coulter alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Coulter respectfully requests to enter judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

**COULTER COUNT X**
**(Negligence against all Defendants)**

597.    Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

598.    Under the circumstances stated herein, Defendants owed a duty of care towards Coulter.

599.    Among other things, that duty included the obligation to deal with Coulter and his image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Coulter's image, likeness and/or identity in derogation of his rights, and to not cause harm to Coulter.

600.    Defendants breached that duty by using Coulter's image, likeness and/or identity without Coulter's authorization, permission or consent.

601.    Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

602.    Defendants' conduct and breach as described above directly and proximately caused injury to Coulter's reputation, brand, goodwill and livelihood for which he has suffered damages. Further, Coulter is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Coulter's rights. Accordingly, Coulter is entitled to an award of punitive damages against Defendants in an amount sufficient to

punish and make an example of Defendants. Therefore, Coulter reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Coulter respectfully requests that the Court enter judgment against Defendants for damages, including but not limited to actual damages, punitive damages according to proof, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## <u>COULTER COUNT XI</u>
### (Violation of the Respondeat Superior Doctrine against all Defendants)

603.     Plaintiff Coulter re-alleges paragraphs 1 through 40, 76 through 87, and 99 through 104 above, and incorporates the same by reference as though fully set forth herein.

604.     Under the circumstances stated herein, Defendants owed a duty of care towards Coulter.

605.     Among other things, that duty included the obligation to deal with Coulter and his image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Coulter's image, likeness and/or identity in derogation of his rights, and to not cause harm to Coulter.

606.     Coulter's image, likeness and/or identity are recognizable in the photo identified in **Exhibit D.**

607.     Defendants breached that duty by using Coulter's image, likeness and/or identity without Coulter's authorization, permission or consent.

608.     Defendants' conduct and breach as described above directly and proximately caused injury to Coulter's reputation, brand, goodwill and livelihood for which he has suffered damages.

609.    In addition, Defendants and/or their agents promulgated policies and procedures concerning the prevention of misappropriation of images, likenesses and identities. Yet, Defendants negligently failed to enforce those policies, communicate them to their employees, or to supervise their employees to ensure that these policies and both State and Federal Law were not violated.

610.    Pleading alternatively, Defendants and/or their agents failed to promulgate policies and procedures concerning the prevention of misappropriation of images, likenesses and identities and, as such, are liable to Coulter for the harm that failure caused to Coulter.

611.    More specifically, Defendants had a duty to all members of the public, namely to Coulter, to refrain from the misappropriation of his image, likeness and/or identity. Defendants violated that duty by negligent hiring, screening, retaining, supervising, and training of their employees and agents.

612.    As a result of Defendants' conduct, Coulter suffered damages to be determined according to proof at trial; but Coulter alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Coulter respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Maysa Quy's Causes of Action*

**QUY COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants**)

613.    Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

614.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Quy from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

615.     Defendants used Quy's image, likeness and/or identity as described herein without authority in order to create the perception that Quy worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities.

616.     Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

617.     Defendants' use of Quy's image, likeness and/or identity to advertise, promote and market Defendants' business, Paradise Lakes, and/or Paradise Lakes' events and activities as described in this Complaint was false and misleading.

618.     Defendants' unauthorized use of Quy's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Quy worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants business or Paradise Lakes' events and activities and/or that Quy would participate in or appear at the specific events promoted in the advertisements.

619.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Paradise Lakes, as to the general quality of attendees and participants of Paradise Lakes and in its events, as well as specifically whether Quy worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.

620.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Quy worked at or was otherwise affiliated with Paradise Lakes, endorsed Defendants' business, Paradise Lakes or Paradise Lakes' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Paradise Lakes' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Paradise Lakes, visit Paradise Lakes, and participate in events at Paradise Lakes and had a material effect and impact on the decision of members and prospective members and participants to join Paradise Lakes, visit Paradise Lakes and take part in the events at Paradise Lakes.

621.    Defendants' advertisements, promotions and marketing of Paradise Lakes and events at Paradise Lakes occur in and are targeted to interstate commerce.  Specifically, Defendants promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Paradise Lakes' events.

622.    Defendants' unauthorized use of Quy's image, likeness and/or identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting Paradise Lakes and its activities and attracting clientele to Paradise Lakes.

623.    Defendants knew or should have known that their unauthorized use of Quy's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

624.    Defendants' unauthorized use of Quy's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

625.    Defendants' wrongful conduct as described herein was willful.

626.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

627.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Quy of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy.

628.    The method and manner in which Defendants used the image of Quy further evinces that Defendants were aware of or consciously disregarded the fact that Quy did not consent to Defendants' use of the image to advertise Defendants' business.

629.    Defendants have caused irreparable harm to Quy, her reputation and brand by attributing to Quy the nudist lifestyle and activities at Paradise Lakes.

630.    Defendants' unauthorized use of Quy's image, likeness and/or identity directly and proximately caused and continue to cause damage to Quy in an amount to be determined at trial.

**WHEREFORE**, Quy respectfully requests that the Court issue a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial,

lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## QUY COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness against all Defendants)

631.    Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

632.    Quy has a statutory right of publicity under Section 540.08, Florida Statutes.

633.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

634.    Despite the clear language of Section 540.08, Defendants published Quy's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Paradise Lakes and Paradise Lakes' event and activities.

635.    Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

636.    Defendants never sought permission or authority to use Quy's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

637.    Quy never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

638.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Quy's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

639.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Quy of a property interest during the entire time period in which the unauthorized use took place.

640.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

641.    Alternatively, Defendants acted negligently towards Quy in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

642.    Defendants have caused irreparable harm to Quy, her reputation and brand by attributing to Quy the nudist lifestyle and activities at Paradise Lakes.

643.    Defendants have also damaged Quy as a direct and proximate result of their unauthorized use of Quy's image, likeness and/or identity without compensating Quy. Accordingly, Quy is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Quy reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Quy respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and

restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

**QUY COUNT III**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

644.     Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

645.     Quy has a common law right of publicity.

646.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Quy without express written or oral consent to such use.

647.     Defendants published, printed, displayed and/or publicly used Quy's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Paradise Lakes and Paradise Lakes' events and activities.

648.     Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

649.     Defendants took these actions without Quy's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Quy's image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

650.     Quy never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' business, Paradise Lakes or any Paradise Lakes' event or activity.

651.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Quy's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

652.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Quy of a property interest during the entire time period in which the unauthorized use took place.

653.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

654.    Alternatively, Defendants acted negligently towards Quy in using and disseminating, without authority, her image, likeness and/or identity on Paradise Lakes' social media outlets in order to promote, advertise and market Paradise Lakes and Paradise Lakes' events and activities.

655.    Defendants have caused irreparable harm to Quy, her reputation and brand by attributing to Quy the nudist lifestyle and activities at Paradise Lakes.

656.    Defendants have also damaged Quy as a direct and proximate result of their unauthorized use of Quy's image, likeness and/or identity without compensating Quy.

**WHEREFORE**, Quy respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

**QUY COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

657.    Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

658.    Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

659.    Defendants are direct and active participants in market dealings with Quy by using her image to advertise and promote Paradise Lakes not only to patrons of Paradise Lakes, but to the general public in interstate commerce.

660.    Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

661.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

662.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.    failing to obtain consent from Quy prior to promoting Defendants' business by and through the misappropriation and use of Quy's image, likeness and/or identity;

b.    failing to obtain authorization from Quy prior to the publication of Quy's image, likeness and/or identity on Paradise Lakes' social media outlets;

c.    failing to compensate Quy for the misappropriation and use of her image, likeness and/or identity on Paradise Lakes' social media outlets;

d.     falsely representing by implication to the public that Quy endorsed the Defendants' business, or would be present at and participate in Paradise Lakes' events; and

e.     falsely representing by implication that Quy sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

663.   Defendants' conduct described herein was misleading.

664.   Defendants knew their unauthorized use of Quy's image, likeness and/or identity was misleading.

665.   Defendants' unauthorized use of Quy's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

666.   Defendants' wrongful conduct as detailed herein was willful and malicious.

667.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Quy of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy.

668.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

669.   Alternatively, the method and manner in which Defendants used Quy's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Quy did not consent to Defendants' use to advertise Defendants' business.

670.   Defendants have caused irreparable harm to Quy, her reputation and brand by attributing to Quy the nudist lifestyle and activities at Paradise Lakes.

671.   Defendants' unauthorized use of Quy's image, likeness and/or identity directly and proximately caused damage to Quy in an amount to be determined at trial.

**WHEREFORE**, Quy respectfully requests that the Court issue a judgment against Defendants for actual damages, including loss of profit, attorneys' fees, interest, costs, compensatory damages, damage to professional reputation, consequential damages, statutory civil penalties under Fla. Stat. § 501.2075, and such other relief as this Court deems just and proper.

**QUY COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

672.    Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

673.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

674.    Defendants knowingly appropriated, used and disseminated Quy's image, likeness and/or identity without authorization or consent.

675.    Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

676.    Defendants' misappropriation of Quy's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Quy of certain rights.

677.    Defendants' misconduct detailed in this Complaint denied Quy the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

678.    Defendants' appropriation of Quy's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

679.    Defendants' wrongful conduct as detailed herein was willful and malicious.

680.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Quy of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy.

681.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

682.    Alternatively, the method and manner in which Defendants used Quy's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Quy did not consent to Defendants' use in order to advertise Defendants' business.

683.    Defendants' appropriation and use of Quy's image, likeness and/or identity without authority directly and proximately caused damage to Quy in an amount to be determined at trial.

**WHEREFORE**, Quy respectfully requests that the Court issue a judgment against Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## QUY COUNT VI
### (Unjust Enrichment against all Defendants)

684.    Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

685.   Quy has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

686.   Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

687.   Defendants were aware that Quy's image, likeness and/or identity were valuable.

688.   Defendants were aware of the resulting benefit from usage of Quy's image, likeness and/or identity.

689.   Defendants have retained profits and other benefits conferred upon them by using Quy's image, likeness and/or identity to promote and advertise Defendants' business, Paradise Lakes or Paradise Lakes' events.

690.   It would be inequitable for Defendants to retain the benefits conferred upon them by using Quy's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Quy respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

<u>**QUY COUNT VII**</u>
**(Unlawful Conversion against all Defendants)**

691.   Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

692.   Quy is, and at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

693.    Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

694.    Quy has, and for all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

695.    By their acts and conduct alleged above, Defendants have converted Quy's property rights, including without limitation, Quy's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

696.    Quy is informed and believes and on such information alleges that Defendants have refused to return Quy's property to her or pay for the deprivation of Quy's property.

697.    As a result, Quy has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Quy alleges that the same are within the jurisdiction of the Court.

698.    Further, Quy is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Quy's rights. Accordingly, Quy is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Quy reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Quy respectfully requests this Court to issue a judgment against Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## QUY COUNT VIII
### (Unfair Competition against all Defendants)

699.    Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

700.    Quy is, and at all relevant times was, the exclusive owner of all rights, title, and interest in and to her image, likeness and identity and possession thereof in Florida.

701.    Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

702.    Quy has not authorized or licensed Defendants to reproduce, distribute, disseminate, or otherwise exploit her image, likeness and/or identity in any manner.

703.    Defendants were not entitled to or authorized to reproduce, distribute, disseminate or otherwise exploit Quy's image, likeness and/or identity.

704.    Quy has expended significant time, labor, and money in the making and marketing of her image, likeness and identity. Defendants have paid nothing to Quy for reproducing, distributing, disseminating, or otherwise exploiting Quy's image, likeness and/or identity. Without expending any time, labor, money or marketing of their own, Defendants simply appropriated the commercial qualities, reputation, and salable properties of Quy, including without limitation Quy's image, likeness and/or identity, by unfairly and directly competing with Quy's use, sale, distribution, and exploitation of her image, likeness and/or identity.

705.    In so doing, Defendants have undermined Quy's substantial and financial investment in herself for Defendants' own commercial benefit and have commercially damaged the market value of Quy's image, likeness and/or identity.

706.    Defendants have usurped for themselves the fruits of Quy's popularity and fame.

707.    Defendants have profited from the results of Quy's hard work modeling and from her portfolio and skill without having to incur any expense in relation to Quy's image, likeness and/or identity.

708.    Furthermore, Defendants' unauthorized use of Quy's image, likeness and/or identity has likely caused confusion, mistake, or deception as to the source, sponsorship, affiliation, or connection between Quy and Paradise Lakes.

709.    Defendants' acts constitute unfair competition involving the misappropriation of Quy's image, likeness and/or identity.

710.    As a direct and proximate result of Defendants' misappropriation and unfair competition, Quy is entitled to recover all proceeds and other compensation received or to be received by Defendants from the misappropriation and unfair competition of Quy's image, likeness and/or identity.

711.    Quy has been damaged and Defendants have been unjustly enriched, in an amount to be proved at trial; but Quy alleges that the same are within the jurisdiction of the Court.

712.    Quy is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Quy's rights. Accordingly, Quy is entitled to an award of punitive damages against Defendants in the amount sufficient to punish and make an example of Defendants. Therefore, Quy reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72

**WHEREFORE**, Quy respectfully requests this Court to enter a judgment against Defendants for all remedies available under a claim of unfair competition of Defendants' misappropriated image, likeness and/or identity of Quy, including but not limited to actual

damages, punitive damages according to proof, consequential damages, and further relief in law or equity as this Court deems just and proper.

## QUY COUNT IX
### (Fraudulent Misrepresentation against all Defendants)

713.   Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

714.   Quy is informed and believes and herein alleges that Defendants misrepresented to the public Gibson's patronage, connection, or sponsorship with Paradise Lakes for the purposes of financial gain.

715.   The misrepresentations by Defendants include, but are not limited to misrepresentations of material facts in Defendants' advertisement, which purposefully contained Paradise Lakes' logo next to the face and body of Quy.

716.   Quy is informed and believes and alleges that Defendants knew that Quy was not legally connected or working at or for Defendants.

717.   Quy is informed and believes and herein alleges that Defendants published the image, likeness and/or identity of Quy as if she worked for or endorsed Paradise Lakes, either hosting, supporting, or appearing at an event at Paradise Lakes in order to target specific audiences and to draw in big spending clients who were/are hoping to meet Quy.

718.   Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

719.   The misrepresentations and/or acts of fraud by Defendants were perpetuated directly and indirectly by Defendants and their sales representatives, employees, and/or agents.

720.   The misrepresentations by Defendants constitute a continuing tort.

721.   Quy is informed and believes and herein alleges that injury resulted to herself and the general public when the public justifiably relied on Defendants' misleading advertisement and paid the membership and/or entry fees to visit Paradise Lakes on November 8, 2013 to their detriment.

722.   Quy is entitled to restitution of the reasonable value of the benefit derived by Defendants for the unauthorized use Defendants made of Quy's image, likeness and/or identity.

723.   As a result of Defendants' conduct, Quy suffered damages to be determined according to proof at trial; but Quy alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Quy respectfully requests to enter judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## QUY COUNT X
### (Negligence against all Defendants)

724.   Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

725.   Under the circumstances stated herein, Defendants owed a duty of care towards Quy.

726.   Among other things, that duty included the obligation to deal with Quy and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Quy's image, likeness and/or identity in derogation of her rights, and to not cause harm to Quy.

727.   Defendants breached that duty by using Quy's image, likeness and/or identity without Quy's authorization, permission or consent.

728.   Quy's image, likeness and/or identity are recognizable in the photo identified in

**Exhibit E.**

729.     Defendants' conduct and breach as described above directly and proximately caused injury to Quy's reputation, brand, goodwill and livelihood for which she has suffered damages. Further, Quy is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Quy's rights. Accordingly, Quy is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Quy reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Quy respectfully requests that the Court enter judgment against Defendants for damages, including but not limited to actual damages, punitive damages according to proof, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## QUY COUNT XI
### (Violation of the Respondeat Superior Doctrine against all Defendants)

730.     Plaintiff Quy re-alleges paragraphs 1 through 40 and 88 through 104 above, and incorporates the same by reference as though fully set forth herein.

731.     Under the circumstances stated herein, Defendants owed a duty of care towards Quy.

732.     Among other things, that duty included the obligation to deal with Quy and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use Quy's image, likeness and/or identity in derogation of her rights, and to not cause harm to Quy.

733.     Quy's image, likeness and/or identity are recognizable in the photo identified in **Exhibit E.**

734.     Defendants breached that duty by using Quy's image, likeness and/or identity without Quy's authorization, permission or consent.

735.     Defendants' conduct and breach as described above directly and proximately caused injury to Quy's reputation, brand, goodwill and livelihood for which she has suffered damages.

736.     In addition, Defendants and/or their agents promulgated policies and procedures concerning the prevention of misappropriation of images, likenesses and identities. Yet, Defendants negligently failed to enforce those policies, communicate them to their employees, or to supervise their employees to ensure that these policies and both State and Federal Law were not violated.

737.     Pleading alternatively, Defendants and/or their agents failed to promulgate policies and procedures concerning the prevention of misappropriation of images, likenesses and identities and, as such, are liable to Quy for the harm that failure caused to Quy.

738.     More specifically, Defendants had a duty to all members of the public, namely to Quy, to refrain from the misappropriation of her image, likeness and/or identity. Defendants violated that duty by negligent hiring, screening, retaining, supervising, and training of their employees and agents.

739.     As a result of Defendants' conduct, Quy suffered damages to be determined according to proof at trial; but Quy alleges that the same are within the jurisdiction of the Court.

**WHEREFORE**, Quy respectfully requests that the Court issue a judgment against Defendants for damages, including but not limited to actual damages, costs, interest, and such other and further relief in law or equity as this Court deems just and proper.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally in an amount to be determined at trial but in no event less than **$325,000.00** aggregated across all Plaintiffs and as follows:

1.      For damages as provided in 15 U.S.C. § 1125(a);

2.      For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.      For damages as provided in Fla. Stat. §540.08;

4.      For general damages according to proof;

5.      For special damages according to proof;

6.      For consequential damages according to proof;

7.      For treble compensatory damages as provided in Fla. Stat. §772.11;

8.      For attorneys' fees and costs of suit, as provided for in Fla. Stat. §772.11;

9.      For damages as provided in Fla. Stat. §501.201;

10.     For attorneys' fees and costs of suit, as provided for in Fla. Stat. §501.2105;

11.     For civil penalty, as provided for in Fla. Stat. §501.2075;

12.     For reasonable attorneys' fees and costs as permitted by law;

13.     For emotional distress damages according to proof;

14.     For prejudgment interest and royalties at the legal rate;

15.     For such other relief as this Court deems just and proper; and

16.     Plaintiffs reserve the right to amend the pleadings to include punitive damages pursuant to Fla. Stat. §768.72.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand trial by jury on all issues so triable.

Dated: March 30, 2016.

Respectfully Submitted,

THE CASAS LAW FIRM, P.C.

By: <u>*/s/ Sarah Cabarcas*</u>
Sarah M. Cabarcas, Esq.
Florida Bar No.: 90938
sarah@casaslawfirm.com
Brickell Bayview Center
80 S. W. 8th Street, Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243

*Attorney for Plaintiffs Cielo Jean Gibson, Dessie Mitcheson, Irina Voronina, John Coulter, and Maysa Quy.*

# EXHIBIT A

https://twitter.com/ParadiseLakes1/status/393663510402154496/photo/1

10/16/2015

Home

About

Paradise Lakes on Twitter: "Finally Friday....Freaky!! See what is happening http://t.co/5OndCogu8K"

Search Twitter    🔍    Have an account? Log in ▾



**Paradise Lakes**
@ParadiseLakes1

➕ Follow

# Finally Friday....Freaky!! See what is happening

C.J
GIBSON





3:15 PM - 25 Oct 2013

🔼    🔁    ★    •••

© 2015 Twitter  About  Help  Terms  Privacy  Cookies  Ads info

1/1

# EXHIBIT B

10/16/2015   Paradise Lakes on Twitter: "Join us for #happyhour 5PM-CLOSE tonight #RepealDay just happens to fall on a Thurs of 178... (we do this every wk) but enjoy!! ht...

Case 8:16-cv-00791-CEH-AAS   Document 1   Filed 04/01/16   Page 125 of 178 PageID 125



Home     About

Search Twitter 🔍     Have an account? Log in ▾



**Paradise Lakes**
@ParadiseLakes1

*DESSIE MITCHESON*

👤+ Follow

Join us for #happyhour 5PM-CLOSE tonight #RepealDay just happens to fall on a Thurs (we do this every wk) but enjoy!!



FAVORITE
1

8:11 AM - 5 Dec 2013

↩     🔁     ⭐     •••

© 2015 Twitter   About   Help   Terms   Privacy   Cookies   Ads info

# EXHIBIT C

 Home    About    Search Twitter    Have an account? Log in

**Paradise Lakes**
@ParadiseLakes1

 Follow

Witching Hour Sat night (11/1) When the clock strikes 12, the Midnight Costume Contest will be on!#HalloweenCostumes



| RETWEET | FAVORITES | |
|---------|-----------|--|
| 1 | 3 | |

*IRMA VOROMM*

3:12 PM - 31 Oct 2014

© 2015 Twitter   About   Help   Terms   Privacy   Cookies   Ads info

10/16/2015

https://www.facebook.com/paradiselakesresort/photos/a.10150128226400898.336452.9718205008971/10153279577025898/?type=3&theater

(6) Timeline Photos

Home 20+

6





**Paradise Lakes Resort**
November 1, 2014 ·

Are you little Ghouls all set for tonight?
If you forgot anything - the Boutique is open until 7pm
We can't wait to see what all you Spirits are coming as
tonight!!

Like · Comment · Share

5 people like this.

Write a comment...

1/1

10/16/2015

https://www.facebook.com/paradiselakesresort/photos/pb.97182090897..2207520000.1445048584./10154094047956898/?type=3&theater

Paradise Lakes Resort's Photos
in Timeline Photos



Tag Photo   Options   Share   Send   Like

IRINA
VOROMMA

**Paradise Lakes Resort**
August 15 ·

Wrap yourself up in a sheet or throw a laurel wreath on
your head and call it done!! Just get here for the toga,
togA, toGA, TOGA!! party tonight - Club Reveal 8pm

Like · Comment · Share

10 people like this.

Write a comment...

# EXHIBIT D

https://www.facebook.com/paradiselakesresort/photos/a.10150128226400898.336452.971820090897/10152462855365898/?type=3&theater

10/16/2015

(6) Timeline Photos



JOHN COULTER



**Paradise Lakes Resort**
December 27, 2013 ·

Let's see what we got cookin' up fresh for you today....

Lunch Special: 6 pc. Chicken Wing Basket with fries
$7.99
Ask about our daily drink specials
... See More

Like · Comment · Share

6 people like this.

Write a comment...

https://www.facebook.com/paradiselakesresort/photos/a.10150128226400898.336452.97182090897/10152462653565898/?type=3&theater

10/16/2015



(6) Timeline Photos

See All

# EXHIBIT E

 Home   About   Search Twitter   Have an account? Log in

 **Paradise Lakes**
@ParadiseLakes1

MAYSA GUY

 Follow

Phew, finally Friday! Check out the happenings for tonight. #livemusic poolside, #lingerie night in #ClubReveal..FAB!



7:52 AM - 8 Nov 2013

© 2015 Twitter   About   Help   Terms   Privacy   Cookies   Ads info

# EXHIBIT F



Dennis C. Postiglione, JD
*Supervising Partner, Licensed in Texas*

Sarah Cabarcas, JD
*Partner, Licensed in Florida*

Ludmila Khomiak, JD
*Senior Associate, Licensed in Florida*

Ryan Tegnelia, JD
*Of Counsel, Licensed in California*

Steven A. Marczeski, JD
*Of Counsel, Licensed in California*

Timothy Dennison JD, MBA
*Of Counsel, Licensed in California*
*UK Solicitor*

Joseph N. Casas, JD, MBA
*C.E.O. & Managing Attorney ± �812*

± Admitted to practice in California
812 Illinois, Military Courts
Various Federal District Courts including
Northern and Western District of Texas

Headquarters:
402 West Broadway
Suite 400
San Diego, California 92101

Main: 855.267.4457
Fax: 855.220.9626
www.casaslawfirm.com

December 11, 2015

**Via USPS Priority Mail**

**JERRY L. BUCHANAN, Registered Agent & Manager**
**RESORT AT PARADISE LAKES, LLC d/b/a PARADISE LAKES RESORT**
**2001 PARADISE LAKES BLVD.**
**LUTZ, FL 33558**

*Re: Unlawful Use of Images of Cielo Jean Gibson, Dessie Mitcheson, Irina Voronina, John Coulter, and Maysa Quy – Cease & Desist and Demand for Payment* **-** **Privileged/Confidential Communication Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement Negotiations**

Mr. Buchanan,

This law firm represents models Cielo Jean Gibson, Dessie Mitcheson, Irina Voronina, John Coulter, and Maysa Quy (herein referred to as "Models"). I am writing to you regarding your unauthorized use of the Models' images and likeness (herein referred to as "Images") to promote and market your strip club known as **Paradise Lakes Resort** in Lutz, Florida. **You stole the Models' Images and used them for the promotion of your strip club**.

This letter constitutes a demand to cease and desist any further use of the Models' Images as well as a demand for payment for the unauthorized use of the same.

### SUMMARY OF FACTS

### Your Business & Theft of Images

Resort at Paradise Lakes, LLC operates a strip club known as "Paradise Lakes Resort" (herein referred to as "Paradise Lakes Resort") in Lutz, Florida either directly or through various subsidiaries. Based on the preliminary review of your business, it is clear that Paradise Lakes Resort enjoys great success in the Pasco County area. It is no secret that Paradise Lakes Resort is a strip club that engages in the business of selling alcohol in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement Negotiations – Paradise Lakes Resort

December 11, 2015

Paradise Lakes Resort has been using the Models' Images on several of your websites and other marketing material. Attachments "A" – "E" to this letter are true and correct copies of screen captions of your social media websites (and other marketing materials) depicting the *known* theft of the Models' Images. We believe your establishment has used the Models' Images on other mediums as well and we will continue to investigate the same.

### The Models

The Models whose Images you stole are gorgeous and talented models who make a living by promoting their Images to various clients. They take great pride in their reputation in the talent industry. *Any improper or unauthorized use of their likeness will substantially injure their careers.* The fact that their Images are being associated with a strip club is very injurious to their livelihood and we have been instructed to prosecute this matter to the fullest extent of the law.

**Cielo Jean Gibson** is an accomplished model who enjoys great success in her industry. Ms. Gibson has almost 52,000 Instagram followers and has appeared in *FHM* magazine. Her career was started when she became the *Import Tuner* model search winner. Ms. Gibson has a tremendous motor sport following as a *Falken Drift Team* model, a *Short Block Technologies Inc*. model, and a *Momo* sport model. Ms. Gibson is also a Top Rank Boxing model.

**Attachment "A"** is a true and correct copy of the Image you stole of Cielo Jean Gibson. On October 25, 2013, Ms. Gibson's Image was used to promote Paradise Lakes Resort on your Twitter page. The Image was used to promote Paradise Lakes Resort's "Finally Friday" event and the complimentary entrance for "couples and single ladies" after 5pm. In this advertisement, Ms. Gibson is pictured wearing a lingerie outfit with a caption next to her Image, which provided, "Lingerie Night in Club Reveal, Wear your Sexiest!" thus giving the impression that Ms. Gibson is a stripper at your club. The Image of Ms. Gibson was used without her consent and was altered to intentionally give the impression that Ms. Gibson is a stripper working at Paradise Lakes Resort and that she endorses the strip club.

**Dessie Mitcheson** is a model and actress. She is best known for winning *Maxim's Hometown Hottie* contest in 2013. The previous year, she was named the face of the *MGM Grand* and the face of *Playboy Intimates*. Ms. Mitcheson most recently stood by Floyd Mayweather's side at the biggest fight of the century as the main ring girl.

**Attachment "B"** is a true and correct copy of the Image you stole of Dessie Mitcheson. On December 5, 2013, you used Ms. Mitcheson's Image on your Twitter page with the intent to promote "happy hour" and "repeal day" at Paradise Lakes Resort. The Image shows Ms. Mitcheson in a Christmas outfit advertising "Happy Hour from 5pm till close!" on December 5th and 12th only. The Image was also used to advertise "Thursday Night Football" and "Sports Menu and Drink Specials" at Paradise Lakes Resort. The Image of Ms. Mitcheson was used without her consent and altered to intentionally give the impression that Ms. Mitcheson is a stripper working at Paradise Lakes Resort and that she endorses the strip club.

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
        Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
        Negotiations – Paradise Lakes Resort

December 11, 2015

**Irina Voronina** is an international model and actress. As her international modeling career began
to skyrocket, Ms. Voronina was brought to America, where she was introduced to *Playboy* Studios
in Los Angeles, CA. She eventually became *Playboy* Playmate of the Month for January 2001,
and then permanently relocated to Los Angeles, CA to take her career to the next level. She signed
with Wilhelmina LA modeling agency, which offered her the opportunity to work with world-
famous photographers such as Teri Richardson, Mathew Rolston, Antoine Verglas, David
LaChapelle, and many others. Ms. Voronina is an advertisers dream, known for her sultry look,
charm, and on-set professionalism. Her beauty has represented international brands, including
SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, Sisley & Detour, to name a few. She has
millions of visual impressions around the globe via the covers and pages of such worldwide
magazines as *FHM*, *Maxim*, *Playboy* (in 20 countries), *Max* (Italy), *Ocean*, *Shape*, *944*, *Knockout*,
*Q* (UK), *People* (Australia), and most recently *Kandy*, *Rukus*, *Vape*, and *Browz*. In addition to
being a model, Ms. Voronina has appeared on TV and the big screen. She has over 3,000,000 likes
on Facebook and 348,000 followers on Instagram.

**Attachment "C"** is a true and correct copy of the Image you stole of Irina Voronina. On October
31, 2014, you used Ms. Voronina's Image on your Twitter page with the caption, "Witching hour
Sat Night (11/1) When the clock strikes 12, the Midnight Costume Contest will be on!" Ms.
Voronina appeared as the model wearing a female pirate Halloween costume. The Image was used
to promote an event called "Halloween in Paradise" and was used to advertise a "Midnight
Costume Parade" dated for November 1st in which a "$1,400 Prize Package" was being offered, in
addition to a "FULL YEAR Membership!". The same Image, was used again on November 1,
2014 on your Facebook page.

On August 15, 2015, you uploaded another stolen image of Ms. Voronina to your Facebook page.
This Image was used to promote a "Toga Party Theme Night" at Paradise Lakes Resort. In this
advertisement, Ms. Voronina is dressed in a Toga outfit, thus giving the impression that Ms.
Voronina is a stripper at your club. Both Images of Ms. Voronina were used without her consent
and altered to intentionally give the impression that Ms. Voronina is a stripper working at Paradise
Lakes Resort and that she endorses the strip club.

**John Coulter** was born in Arizona. He spent two years studying illustration on a full art
scholarship at the University of Arizona and then continued his studies at the prestigious Art Center
College of Design in Pasadena, CA. Along with visual arts, Mr. Coulter pursued other areas of
interest including performing arts, which led him to Disneyland, where he worked both, as an artist
in the entertainment art department and moonlighted as Prince Charming in the Main Street
Electrical Parade. He went on to play other Disney characters. One of the highlights was playing
Tarzan in the opening cast of Tarzan Rocks. His princely charm also took him to Tokyo
Disneyland, where he performed many other roles. While living in California, Mr. Coulter began
a modeling career that has lasted over 20 years. This led him to New York and Europe where he
worked with such renowned photographers as Ellen Von Unwerth and David Lachapelle. He shot
a jeans campaign with Cindy Crawford, a MAC Cosmetics campaign with Mary J. Blige and Lil'
Kim. He walked the runways with Naomi Campbell, Kate Moss, Marcus Schenkenberg and Tyson

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
        Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
        Negotiations – Paradise Lakes Resort

December 11, 2015

Beckford. He also appeared in television commercials with Paris Hilton, Heidi Klum, Kristen
Chenoweth, and Karolina Kurkova. Mr. Coulter was also on Tyra Bank's *America's Next Top
Model* show and appeared in a Madonna video directed by Guy Ritchie and can now be seen on
Britney Spears' Blackout Album as the controversial priest. In addition, Mr. Coulter graced the
packaging and ads for Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male.

**Attachment "D"** is a true and correct copy of the Image you stole of John Coulter. On December
23, 2013, you uploaded Mr. Coulter's Image to your Facebook page. The Image was used to
promote a lunch special, as well as drink specials. The Image shows Mr. Coulter dressed in a chef's
outfit, with the Facebook caption, "Let's see what we got cookin' up fresh for you today." Mr.
Coulter's Image was used with intent to deceive the viewing public into believing that Mr. Coulter
is one of the chefs at your club. The Image of Mr. Coulter was used without his consent and altered
to intentionally give the impression that Mr. Coulter is a chef working at Paradise Lakes Resort
and that he endorses the strip club.

**Maysa Quy** is a beauty, fitness, commercial, and swimwear model. She has worked for brands
such as Sketchers Shoes, Benefit Cosmetics, CoverFX Cosmetics, Dreamgirl Int'l Lingerie, Mini
Cooper USA, T-Mobile, Apple, Nike, Microsoft, and David's Bridal. She is currently an assistant
manager at Laser Away in San Jose, CA and San Francisco, CA. She is also currently employed
at Nordstrom/Bobbi Brown Cosmetics (Valleyfair, CA) as a makeup artist and at Equinox (Palo
Alto, CA) as a personal trainer. Ms. Quy has over 11,000 Instagram followers, almost 4,000
Facebook followers, and over 4,000 Twitter followers.

**Attachment "E"** is a true and correct copy of the Image you stole of Maysa Quy. On November
8, 2013, Ms. Quy's Image was used on your Twitter page. The Image was used to promote Paradise
Lakes Resort's "Finally Friday" event, poolside live music, and the complimentary entrance for
"couples and single ladies" after 5pm. In this advertisement, Ms. Quy is pictured wearing a lingerie
outfit with a caption next to her Image, which provided, "Lingerie Night in Club Reveal, Wear
your Sexiest!" thus giving the impression that Ms. Quy is a stripper at your club. The Image of
Ms. Quy was used without her consent and was altered to intentionally give the impression that
Ms. Quy is a stripper working at Paradise Lakes Resort and that she endorses the strip club.

You stole the Models' Images for use on Paradise Lakes Resort's promotional and marketing
materials, to include but not limited to Paradise Lakes Resort's Facebook and Twitter accounts.
The Models must be compensated for the unlawful use of their Images.

**CEASE AND DESIST NOTICE**

One of the purposes of this letter is to demand that you immediately cease and desist any further
use of the Models' Images on any advertising, point of sale, posters, and your partners' or third
party websites such as Facebook and Twitter. Please be advised that your failure to immediately
cease and desist with the unauthorized activity of using the Models' Images will constitute an

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
Negotiations – Paradise Lakes Resort

December 11, 2015

infringement of their legal rights under Florida and/or Federal law and the continued use shall only
enhance our punitive damage claims against you as stated below.

**Accordingly, we demand that you immediately provide us with the following:**

(1) A written acknowledgement that you have ceased and permanently desisted from using,
publishing, distributing, selling, licensing or otherwise exploiting the Models' names, images, and
likenesses in any manner;

(2) A detailed accounting of any and all monies that you and any affiliated business have received
from the use, publishing, distribution and any other exploitation of Models' names, images, and
likenesses;

(3) All copies of Models' Images in any media, whatsoever, including but not limited to any and
all prints, computer discs, electronic mail, licensees, and provide to us written confirmation of the
same; and

(4) A list of business you are affiliated with, a list of names, e-mail addresses, and other contact
information of those persons and other contact information of those persons and other entities who
viewed downloaded, licensed, saved, printed, purchased and/or copied Models' Images and/or
have published, distributed or otherwise exploited said properties.

## SPOLIATION OF EVIDENCE WARNING AND LITIGATION HOLD

The Models demand that Paradise Lakes Resort maintain, preserve and not destroy any
documentation, photos, and other items relevant to the matters raised in this letter, in particular,
the categories of documents outlined in the enclosed document preservation demand that
accompanies this letter as **Attachment "F"**.  Such demand includes preservation of all documents
reflecting Paradise Lakes Resort's use of the Models' Images on any medium or platform, whether
hard copy or stored electronically, including without limitation, emails or text messages, as well
as all client/customer/member lists and all Paradise Lakes Resort's event attendee rosters or logs
from January 1, 2012 to the present.

Destruction of evidence can lead to serious consequences (both civil and criminal) and subject you
to further damages above and beyond the damages outlined below. Given the nature of the claims
available to the Models, including that the Images pirated and unlawfully used by Paradise Lakes
Resort were expressly and strategically used to market and promote the various events identified
in this letter, it will be critical to obtain names and contact information of all invitees and attendees
at the subject events in order to determine, among other things, the extent to which the Models'
Images enticed and induced your patrons to attend events and thereby contribute to Paradise Lakes
Resort's ill-gotten gains. Accordingly, you should promptly preserve, maintain and not destroy or
permit the destruction of any such evidence.

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
        Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
        Negotiations – Paradise Lakes Resort

December 11, 2015

**APPLICABLE LAW**
**THE RIGHT OF PUBLICITY IN FLORIDA**
**(Unauthorized Appropriation of Name/Likeness)**

**Statutory and Common Law Violations**

In Florida, the unauthorized appropriation of a person's name or likeness is protected by statute. (See, F.S. §540.08). An individual whose name or likeness is used to promote a product or service without his or her consent has a cause of action under Florida law for invasion of privacy. The "right of publicity" is intended to assure an individual the right to own, protect, and commercially exploit his or her name or likeness, including photographs.

Specifically, the statute provides, "No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without ... express written or oral consent." Fla. Stat. §540.08(1).

The term "photograph" includes still or moving pictures or reproductions of an individual. See *Lane v. MRA Holdings, LLC,* 242 F. Supp. 2d 1205 (M.D. Fla. 2002); see also *Tyne v. Time Warner Entm't* Co., L.P., 901 So. 2d 802 (Fla. 2005); *Badillo v. Playboy Entm't Group, Inc.*, 2006 WL 785707 (M.D. Fla. Mar. 28, 2006).

A person whose image is used without consent may bring an action to enjoin the unauthorized use and to recover damages for loss or injury sustained by the publication, including a reasonable royalty, and punitive damages.

In *Tyne v. Time Warner Entertainment Co.*, the Florida Supreme Court held that to find a violation of the right of publicity statute, the use must be for the defendant's benefit and done to promote a product or service. See *Tyne v. Time Warner Entm't Co.*, L.P., 901 So. 2d 802 (Fla. 2005); see also *Almeida v. Amazon.com, Inc*., 456 F.3d 1316 (11th Cir. 2006); *Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002); *National Football League v. Alley, Inc.,* 624 F. Supp. 6 (S.D. Fla. 1983).

The publication or printing of a product (or service) for advertising purposes has been found sufficient to constitute a statutory violation, even when there was no distribution. *Weinstein Design Group, Inc. v. Fielder*, 884 So. 2d 990 (Fla. Dist. Ct. App. 2004).

As with the statutory right of publicity, a violation of the common law right of publicity is found when an individual's name or likeness is used without his or her consent for the benefit its value would confer on the defendant. See *Agency for Health Care Administration v. Associated Industries of Florida, Inc.*, 678 So. 2d 1239 (Fla. 1996); see also *Epic Metals Corp. v. Condec, Inc., 867 F. Supp. 1009* (M.D. Fla. 1994).

Re:   Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
      Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
      Negotiations – Paradise Lakes Resort

December 11, 2015

## Damages For Violating Publicity Rights

As the right of publicity has been formally recognized by statute in Florida, decisions generally cite the statutory right over the common law right. See *Facchina v. Mutual Benefits Corp.*, 735 So. 2d 499 (Fla. 4th Dist. Ct. App. 1999). However, the statutory right does not displace common law rights, so *a plaintiff can simultaneously pursue claims under both the statute and common law*. See Fla. Stat. §540.08(6).

Under the common law right of publicity, a plaintiff may be awarded damages for the unauthorized use of his or her name without proving actual harm or damage. See *Zim v. Western Pub. Co.*, 573 F.2d 1318 (5th Cir.1978); see also *Cason v. Baskin*, 20 So. 2d 243 (Fla. 1944).

Under Florida's right of publicity statute, a plaintiff may bring an action for an injunction and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and *punitive or exemplary damages*. Fla. Stat. §540.08(2). A victorious plaintiff may also receive lost profits (from the damage caused by the use of the unauthorized image(s)) *and prejudgment interest* on the damages awarded. See *Bosem v. Musa Holdings*, 46 So. 3d 42 (Fla. 2010).

At no time did the Models authorize the use of their Images to promote your strip club. Paradise Lakes Resort *intentionally* appropriated the Models' Images for value associated with them and did so to promote Paradise Lakes Resort. The strip club's use of the Images was not in an incidental manner or for newsworthy purpose. Each of the Models has identified their Images depicted in Attachments "A" – "E". There is no doubt that the Models' Images attracted patrons to your strip club and that was the intent of the use of their Images. We are confident that the use of the Models' Images has helped (and is helping) bring more patrons to your establishment and as such, has been to your monetary advantage and benefit.

## NEGLIGENCE AND *RESPONDEAT SUPERIOR*

In Florida, when an employee's acts are committed within the scope or course of his employment, an employer is liable under the doctrine of *Respondeat Superior*. *Garcia v. Duffy*, 492 So.2d 435, 438 (Fla. 2d DCA 1986). "An action falls within the scope of employment if the conduct: (1) is of the kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment." *United Techs. Corp. v. Mazer,* 556 F3d 1260, 1271 (11th Cir. 2009).

By using the Models' Images for promotion of your strip club, your employees and/or agents acted in the course and scope of their employment or agency with you. As such, Paradise Lakes Resort is liable for the conduct of its employees or agents under the doctrine of *Respondeat Superior.*

Moreover, Paradise Lakes Resort negligently failed to enforce policies and procedures concerning the misappropriation of Models' Images, failed to communicate those policies and procedures to

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
Negotiations – Paradise Lakes Resort

December 11, 2015

its employees, or failed to supervise its employees to ensure that its own policies and both State
and Federal laws were not violated. A claim for "negligent supervision" exists in Florida based on
an employer's or employee's negligent supervision of another. *See Benton v. Sch. Bd. of Broward
County, 386 So.2d 831, 834 (Fla. 4th DCA 1980).*

"Negligent supervision" is also used synonymously with "negligent retention." *See Dep't of Envtl.
Protection v. Hardy, 907 So.2d 655, 660 (Fla. 5th DCA 2005).* Negligent retention "occurs when,
during the course of employment, the employer becomes aware or should have become aware of
problems with an employee that indicated his unfitness, and the employer fails to take further
action such as investigating, discharge, or reassignment." *Garcia*, 492 So. 2d at 438-39.

Paradise Lakes Resort had a duty to all members of the public, namely to the Models, to refrain
from misappropriation of their Images. Paradise Lakes Resort violated that duty by negligently
hiring, screening, retaining, and training of their employees and agents.

## NOTICE OF CLAIM FOR CIVIL THEFT

In addition, you have violated Florida's **Civil Theft Statute §772.11** ("Section 772.11"). Under
Section 772.11, any person who proves by clear and convincing evidence that he or she has been
injured in any fashion by reason of any violation of Florida Statutes 812.012 – 812.037 or
825.103(1) (civil theft) is punishable by **treble damages** (threefold the actual damages), attorneys'
fees, and court costs.

Under Fla. Stat. §812.012(4)(b), stolen property is defined as anything of value, and includes
tangible or intangible personal property, including rights, privileges, interests, and claims. A model
has intangible rights, privileges, and interests in her image and her privacy right is a property right.

By stealing the Models' Images you have violated their right to privacy and unwarranted publicity.
Florida's statutory right of publicity (which protects against unauthorized use of a person's image)
creates a property right held by an individual in his or her name and likeness. See *Loft v. Fuller*,
408 So.2d 619 (Fla. Dist. Ct. App. 1981).

Fla. Stat. §812.014(1) also indicates that a person commits theft if he or she knowingly obtains or
uses the property of another with intent to either temporarily or permanently (a) deprive the other
person of a right to the property or a benefit from the property or (b) appropriate the property to
his or her use.

You knowingly stole the Models' Images. You unequivocally knew that the Models' Images were
not pictures of any of your employees ("strippers"). You know who your employees are. Further,
neither you nor any agent acting under you direction, sought consent from the Models to use their
Images; and none of the Models gave permission to use their Images. Moreover, the method and
manner in which you used the Images, such as, but not limited to: altering them in a manner that
made it look like the Models work for, or are patrons of your strip club is clear and convincing

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
        Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
        Negotiations – Paradise Lakes Resort

December 11, 2015

evidence that you intended to steal the Images.

## *PRELIMINARY* EXPERT EVALUATION OF ACTUAL DAMAGES

"Actual damages" as used in this demand is the value of the Images had you sought to procure
each Model for the type of usage of her Image. The "value" of a Model's Image is based on her
earning capacity, history, and the type of usage (e.g., print, advertisement, collateral, branding,
billboard.) Additionally, in negotiating a cost to the use of a Model's Image, the Expert takes into
account the type of establishment.

**Attachment "G"** to this correspondence is Mr. Chamberlin's Preliminary Report dated October
29, 2015.

According to Mr. Chamberlin, the following table outlines the actual damages suffered by each of
my clients:

| Model | Actual Damages |
|:---:|:---:|
| Cielo Jean Gibson | $60,000.00 |
| Dessie Mitcheson | $75,000.00 |
| Irina Voronina | $120,000.00 |
| John Coulter | $30,000.00 |
| Maysa Quy | $40,000.00 |
| **Totals** | **$325,000.00** |

Keep in mind, these are ONLY actual damages and represent only *known* violations. They are
based on who the Models are, the Images we have found, and how you have used the Images.

At this point, and for purposes of attempting to resolve this matter amicably, we are not including
other damages allowed under the law, such as exemplary, consequential, or punitive damages.

Unless this matter is settled out of court, this demand letter in no way limits the Models' rights in
any way with respect to unknown use of their Images.

## DEMAND FOR TREBLE DAMAGES - $975,000.00

As outlined above, Section §772.11 authorizes threefold the actual damages. Accordingly, this
brings the value of the damages and this demand to **$975,000.00**.

### Demand For Policy Limits Pursuant to Florida Statute §627.4137

In addition to the notice of our intent to sue you for Right of Publicity Violation and Civil Theft,
a demand is being made on behalf of our clients and with express authority, pursuant to Fla. Stat.

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement Negotiations – Paradise Lakes Resort

December 11, 2015

§627.4137 ("Section 627.4137"), for the following information with regard to each known policy of insurance, including excess or umbrella coverage:

(a) The name of the insurer;
(b) The name of each insured;
(c) The limits of the liability coverage;
(d) A statement of any policy or coverage defense, which such insurer reasonably believes, is available to such insurer at the time of filing such statement; and
(e) A copy of the policy.

In addition, you or your insurance agent, upon written request of the claimant or the claimant's attorney, must disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers.

The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

## SUMMARY

Your theft of the Models' Images can result in a separate and distinct award for each of the following:

1. General damages for violation of the Models' Right of Publicity;
2. The injury sustained by the Models for the unauthorized use of the Images;
3. Punitive or Exemplary damages (to punish and deter intentional conduct);
4. Lost Profits;
5. Treble damages (as outlined above);
6. Prejudgment Interest; and
7. Attorneys' fees.

Our firm has handled dozens of these matters against some of the worlds' largest corporate defendants and has some of the nation's most renowned experts in the model and talent industry ready to assist us in litigating this matter. We are prepared to litigate this to the fullest extent of the law.

## SETTLEMENT OFFER

*Redacted*

Re:     Unlawful Use of Images – Demand for Payment - Privileged/Confidential Communication
        Pursuant to Florida Evidence Code Section 90.408 Solely For Use in Settlement
        Negotiations – Paradise Lakes Resort

December 11, 2015




*Redacted*




### 30 DAYS TO COMPLY WITH DEMAND

Under Section 772.11 you have 30 days from the receipt of this letter, but no later than January 13, 2016, within which to comply with this demand. If you fully comply, you will be given a written release from further civil liability (under Section 772.11) for the theft of Models' Images used for Paradise Lakes Resort in Lutz, Florida.

Additionally, you have 30 days from the receipt of this letter but no later than January 13, 2016, to comply with our demand under Section 627.413.

I look forward to hearing from you or your legal representative. Feel free to respond to me via e-mail. If we do not receive a response to this demand by **January 13, 2016**, we will promptly prepare this matter for litigation.

                                        Very truly yours,
                                        THE CASAS LAW FIRM, P.C.



                                        Joseph N. Casas, Esq.
                                        *Email: joseph@casaslawfirm.com*

*Copy: Sarah Cabarcas, Florida Partner, & Ludmila (Mila) Khomiak, Florida Senior Associate*

# ATTACHMENT "A"

10/16/2015

https://twitter.com/ParadiseLakes1/status/393863510402154496/photo/1

Paradise Lakes on Twitter: "Finally Friday....Freaky!! See what is happening http://t.co/5OnoCogu8K"

Home

About

Search Twitter

Q

Have an account? Log in ▾

**Paradise Lakes**
@ParadiseLakes1

+ Follow

Finally Friday....Freaky!! See what is happening



Finally friday

Couples & Single Ladies
Complimentary Entrance
After 5 pm

Lingerie Night
in
Club Reveal
Wear Your
Sexiest!

This Week...Kor

Pic Hemingway's Restaurant
6 pm - 10 pm
Reservations 813-949-9327 ext 325

LIVE Entertainment
Poolside 7-10 pm

C. J
GIBSON

3:15 PM - 25 Oct 2013

© 2015 Twitter   About   Help   Terms   Privacy   Cookies   Ads info

**ATTACHMENT "B"**

10/16/2015   Paradise Lakes on Twitter: "Join us for #happyhour 5PM-CLOSE tonight #RepealDay just happens to fall on a Thurs ... (we do this every wk) but enjoy!! ht...

Case 8:16-cv-00791-CEH-AAS   Document 1   Filed 04/01/16   Page 150 of 178 PageID 150

 Home   About

Search Twitter

Have an account? Log in

 **Paradise Lakes**
@ParadiseLakes1

DESSIE MITCHESON

Follow

Join us for #happyhour 5PM-CLOSE tonight #RepealDay just happens to fall on a Thurs (we do this every wk) but enjoy!!



FAVORITE
1

8:11 AM - 5 Dec 2013

   ...

© 2015 Twitter   About   Help   Terms   Privacy   Cookies   Ads info

**ATTACHMENT "C"**

Home   About   Search Twitter   Have an account? Log in

 **Paradise Lakes**
@ParadiseLakes1

 Follow

# Witching Hour Sat night (11/1) When the clock strikes 12, the Midnight Costume Contest will be on!#HalloweenCostumes



| RETWEET | FAVORITES | |
|---|---|---|
| 1 | 3 | |

IRMA
VOROMM

3:12 PM - 31 Oct 2014

© 2015 Twitter   About   Help   Terms   Privacy   Cookies   Ads info

https://www.facebook.com/paradiselakesresort/photos/a.10150128226400898.336452.97182050897/10153279577025899/?type=3&theater

10/16/2015

(6) Timeline Photos

Home 20+

Like

6



IRMA VDRVINA

**Paradise Lakes Resort**
November 1, 2014 ·

Are you little Ghouls all set for tonight?
If you forgot anything - the Boutique is open until 7pm
We can't wait to see what all you Spirits are coming as
tonight!!

Like · Comment · Share

5 people like this.

Write a comment...

1/1

https://www.facebook.com/paradiselakesresort/photos/pb.97182090897..-2207520000.1445048584./10154094047956898/?type=3&theater

10/16/2015

(6) Paradise Lakes Resort

Paradise Lakes Resort's Photos
in Timeline Photos

Tag Photo   Options   Share   Send   Like



IRMA
VOLCOMM

**Paradise Lakes Resort**
August 15 ·

Wrap yourself up in a sheet or throw a laurel wreath on
your head and call it done!! Just get here for the toga,
togA, toGA, TOGA!! party tonight - Club Reveal 8pm

Like · Comment · Share

10 people like this.

Write a comment...

**ATTACHMENT "D"**

https://www.facebook.com/paradiselakesresort/photos/a.10150128226400898.336452.971820090897/10152462855365898/?type=3&theater

10/16/2015

(6) Timeline Photos



JOHN COULTER

**Paradise Lakes Resort**
December 27, 2013 ·

Let's see what we got cookin' up fresh for you today....

Lunch Special: 6 pc. Chicken Wing Basket with fries
$7.99
Ask about our daily drink specials
... See More

Like · Comment · Share

6 people like this.

Write a comment...

https://www.facebook.com/paradiselakesresort/photos/a.10150128226400898.336452.97182090897/10152462655365898/?type=3&theater

10/16/2015



(6) Timeline Photos

See All

# ATTACHMENT "E"

 **Paradise Lakes**
@ParadiseLakes1

MAYSA GUY

 Follow

Phew, finally Friday! Check out the happenings for tonight. #livemusic poolside, #lingerie night in #ClubReveal..FAB!



7:52 AM - 8 Nov 2013

**ATTACHMENT "F"**

***IN RE RESORT AT PARADISE LAKES, LLC. d/b/a PARADISE LAKES RESORT***
**ATTACHMENT F: DOCUMENT PRESERVATION DEMAND**

In anticipation of potential litigation, Resort at Paradise Lakes, LLC d/b/a Paradise Lakes Resort (herein referred to as "Paradise Lakes Resort") officers, and Registered Agents of Paradise Lakes Resort, and all other officers, members, employees, agents or representatives of Paradise Lakes Resort are hereby directed to preserve any and all documents (including, without limitation, any physical documents, tangible things, and electronic documents) in their possession, custody or control relating in any way to Paradise Lakes Resort's marketing, promotion, and advertising media and activities for events hosted at their Lutz, FL location, from on or about January 1, 2012 to the present ("relevant period") in which images of the Models identified in the accompanying Demand Letter were used or depicted.

The categories of documents to be preserved include, without limitation:

- all documents, including email and other communications, contracts, licenses, and notes relating to or referring to Paradise Lakes Resort's promotional or advertising activities;

- hard copy and electronic customer, client, mailing and Club member lists for all events during the relevant period;

- a list of attendees at events hosted or organized by Paradise Lakes Resort during the relevant period;

- all documents constituting or concerning images of the Models;

- all communications concerning images of the Models;

- all documents concerning or constituting social media postings by Paradise Lakes Resort (Facebook, Twitter, Instagram, YouTube, Tumblr);

- accounting records, tax forms, filings and worksheets, and related documents for Paradise Lakes Resort and/or any officer, employee, contractor, agent, or other representative of Paradise Lakes Resort during the relevant period;

- all documents reflecting, referring to or relating to monies received, including profits, and/or paid out in connection with any event hosted or organized by Paradise Lakes Resort;

*IN RE RESORT AT PARADISE LAKES, LLC. d/b/a PARADISE LAKES RESORT*
**ATTACHMENT F: DOCUMENT PRESERVATION DEMAND**

- all documents, including audit reports, reflecting, referring to or relating to quarterly or annual or other audits of the books and records of Paradise Lakes Resort during the relevant period;

- all Paradise Lakes Resort's tax returns prepared and filed during the relevant period, including all working papers used and relied upon in the preparation of the tax returns;

- all banking records and related documents for any checking, savings, money market, credit, investment, retirement, or other account used by or in the name of Paradise Lakes Resort dating back to January 1, 2012. Such records should include, but are not limited to, records reflecting, referring or relating to deposits, withdrawals, checks written, funds transfers, or other transactions impacting any such account;

- all banking records and related documents for any checking, savings, money market, credit, investment, retirement, or other account used by or in the name of Paradise Lakes Resort during the relevant period. Such records should include, but are not limited to, records reflecting, referring or relating to deposits, withdrawals, checks written, funds transfers, or other transactions impacting any such account;

- all documents, including but not limited to checks and/or check stubs, cash receipts, wire transfers, and federal or state tax returns, reflecting income or other money received by and/or paid to Paradise Lakes Resort during the relevant period;

- all communications (including but not limited to emails from any and all accounts used by Paradise Lakes Resort, text messages and online, social network site postings by Paradise Lakes Resort) and documents, including but not limited to notes, memos, and phone messages of calls with or about any of the Models and/or their images;

- all communications (including but not limited to emails from any and all accounts used by Paradise Lakes Resort, text messages and online, social network site postings by Paradise Lakes Resort) and documents, including but not limited to notes, memos, concerning any of the following Paradise Lakes Resort's events identified in Attachments "A" – "E" of the accompanying The Casas Law Firm, P.C.'s Demand Letter.

*IN RE RESORT AT PARADISE LAKES, LLC. d/b/a PARADISE LAKES RESORT*
**ATTACHMENT F: DOCUMENT PRESERVATION DEMAND**

- all documents that refer or relate to in any way the matter discussed in The Casas Law Firm, P.C.'s Demand Letter to Paradise Lakes Resort;

- all corporate filings by Paradise Lakes Resort, including but not limited to documents relating to the corporate formation of any Paradise Lakes Resort;

- all documents and communications concerning insurance maintained by Paradise Lakes Resort during the relevant period, including but not limited to all documents concerning insurance claims on any of the Paradise Lakes Resort insurance policies; and/or

- all documents and communications concerning any lawsuit filed or threatened against Paradise Lakes Resort, or any officer, member, employee, agent or representative for conducted similar or related to the conduct described in The Casas Law Firm, P.C.'s Demand Letter to Paradise Lakes Resort.

For purposes of this notice, the term "Document" includes but is not limited to: contracts, bills of sale, agreements, emails, text message, social media posts or communications, chat room messages, messaging application conversations, promissory notes, documents, applications, file memoranda, correspondence, telegrams, forms, bank statements, tax invoices, files, books, pamphlets, circulars, transcripts, orders, bulletins, periodicals, letters, reports, advertisements, graphs, charts, plans, records, studies, logs, manuals, minutes, photographs or microfilm, diagrams, drawings or other visual materials, lists, working papers, rough drafts, research material, notes, papers, ledgers, journals or other books of account, computer print-outs or discs or tapes, computer programs, intra- and inter-office memoranda, notebooks, desk calendars, diaries, statistical computations, confirmations, reports and/or summaries of interviews or conversations, reports and/or summaries of investigations, opinions or reports of consultants, statements or expressions of policy, appraisals, forecasts, of all natures and kinds whether handwritten, typed, printed, mimeographed, photocopied or otherwise reproduced, all tape recordings (whether for computer, audio or visual replay), models, or other manner of tangible things on which words, phrases, symbols, information or other matter are written, printed or recorded.

*IN RE RESORT AT PARADISE LAKES, LLC. d/b/a PARADISE LAKES RESORT*
**ATTACHMENT F: DOCUMENT PRESERVATION DEMAND**

For purposes of this notice, "Communication" or "Correspondence" shall mean all electronic and hard copy written communications as well as oral communications (unless otherwise specified) including, but not limited to, correspondence, inter- and intra-office and agency communications, meetings, telephone conversations, letters, memoranda, notes, agendas, meeting minutes, facsimiles, text messages, social media postings or messages, messaging application conversations, electronic mail, and other recordings of conversations, discussions or meetings.

Among other things, "Preservation" of electronic documents means to preserve all computer hard-drives, all cloud drives, all emails, all electronic records or recordings, all electronic accounts wherever located and all electronic devices on which such electronic information may be stored and to immediately discontinue any deletion or destruction of such electronically stored information. The obligations to preserve all documents are imposed under both Federal Law and Florida State Law, and you should seek the advice of counsel.

Paradise Lakes Resort should cease destruction of any documents. This Notice is without limitation to the Models' rights under applicable law.

**FAILURE TO ADHERE TO THIS NOTICE MAY SUBJECT YOU TO POTENTIAL LIABILITY FOR SPOLIATION OF EVIDENCE.**

# ATTACHMENT "G"

Thursday, 29 October 2015


Joseph N. Casas
The Casas Law Firm PC.
3801 N. Capital of Texas Highway
Suite E240, #445
Austin, Texas 78746




*Re: Preliminary Expert Report Regarding Image Infringement by Resort at Paradise Lakes LLC., doing business as, Paradise Lakes Resort.*


Dear Mr. Casas


This report is per your request in the above-referenced matter.


## I. Introduction


It is my understanding that **Resort at Paradise Lakes, LLC.,doing business as Paradise Lakes Resort,** (collectively "Paradise"), have taken and used, without authority, certain photographic images belonging to models, **Cielo Jean Gibson, Dessie Mitchenson, Irina Voronina, John Coulter and Maysa Quy** (collectively, the "Models"). You asked that I evaluate and value the compensation the Models would have and should have received for the use of these Images.


It is my understanding that, because the unauthorized nature of Paradise's use and dissemination of the Models' images is not reasonably in dispute, the only issue I was asked to address is measuring certain damages caused by such use. In particular, I was asked to prepare a preliminary report opining on the fair and just compensatory, or *actual*, damages owed to each Model for the use of their images by Paradise in promotional, marketing and advertising media, on websites, social media and other forum. At this time, the report is preliminary, principally because it measures only compensatory-type damages for *known* instances in which Paradise used images without authority, as well as the *known* type and number of usages. My opinions as expressed in this Report do not include any estimation or opinion regarding the calculation of other damages, such as special, consequential, exemplary, or punitive damages.

outlined in this preliminary report, it is my expert opinion that each Model has sustained quantifiable harm and injury as a result of Paradise's conduct in regard to the use of these images and that the value of all presently known image infringements totals **$325,000** in compensatory, or *actual*, damages.

Given that your investigation into this matter is ongoing, and new information may be revealed which may affect my opinion regarding the valuation of damages. As such, I reserve the right to amend this report if I am provided with new information regarding any of the Models listed, including but not limited to, newly identified Models, newly discovered images, and newly discovered usages.

## QUALIFICATIONS

I have been involved in the model and talent industry working as an agent since 1989. I was an agency director at LA Models Management, which is one of the world's largest and most respected talent agencies. I also founded a talent agency called Warning Management Inc. and subsequently took the company public. I have extensive background, knowledge and experience in the modeling and talent industry. I am also an expert in the economics of image use, the valuation of image uses, model and public personality career valuation and the effective rates of work and valuation.

Over the last 26 years I have represented hundreds of the world's top models and, in that capacity, it has been my job to be intimately familiar with the modeling market, to quote work, negotiate deals and understand the particular factors driving the pricing for the particular work and the Models. I have quoted rates for my clients thousands of times. I am very familiar with the market rates for high end models today, because I continue to quote, negotiate and oversee rates, work and career development for my clients on a regular basis.

My qualifications are summarized in greater detail in my curriculum vitae, attached to this report. I am being compensated for my time at the rate of $350 per hour. My compensation is not contingent on the outcome of this litigation, or on the opinions I express in this report, any supplemental or final report, in subsequent litigation or court testimony.

## Information Received and Materials Reviewed

In conjunction with my preparation of this preliminary report, I have reviewed and examined the following documents, images and information.

1. The photographic images of the Models used by Paradise, the product advertised, the usages, any alterations to the images, the media used, and the mode and scope of distribution in various markets around Florida, nationally and worldwide on the web.

2. Each Model's earning history, development, growth, positioning, experience, current exposure, name recognition, personal publicity, social media profile, market demand, complimentary employment, and other factors determining and effecting earning capacity over the past 4 years.

3. The type and caliber of clients that have traditionally employed each Model.

4. Each Model's 1099's and W-2's (where available) for the past 4 years.

5. Agency records and feedback for each Model, where available.

### A.   Overview

As a starting point, it is my opinion that no reputable model, and certainly not the Models here, would consider or agree to the use of their images by Paradise.  The principal reason is that, without exception, each Model of this caliber seeks jobs that will enhance her/ his stature, protect her/his reputation and image and not serve as a potential deterrent for commercial brands to affiliate with that Model. In my experience and expertise, having one's image used in a way that would appear to sponsor, sanction, endorse, support or denote participation in the events or attendance at Paradise club, would damage, harm and devalue the Model's individual careers due to the nature of the industry and product advertised by Paradise.

Experientially, I recall no instance in my more than 26 years working as an agent where I or any other legitimate agent or agency would have booked a Model of the caliber of the Models for this type of client. The Club doing business as Paradise is much more than a resort and club; it is a "clothing optional" or "Nudists resort" meaning a club whose members (predominantly married couples) pay to meet other like minded couples at the Club, the resort or it's events and/or sponsored parties.

The use of the Model's images in connection with promotional, marketing and advertisements for Paradise events was intended to and does necessarily imply that the Model either worked at Paradise, would be in attendance at the advertised event, and/or endorsed the club or events depicted. I believe that in the unlikely event a Model of this caliber would agree to such a job and usage, there would be negotiated a substantial premium for the work to offset anticipated and expected losses of marketability.

Regarding the Models identified in this preliminary report, I am informed that not one of them was ever approached by Paradise or its agent, not one was ever asked to authorize or approve any use whatsoever by Paradise of their image, and not one ever consented to Paradise use of their likeness for any purpose whatsoever.

The rates I have established below are based on the fair market value of each Model's image for the specific appropriated use by Paradise but do not consider the damage or possible end of each models' career, damage to reputation, or loss of other clients and advertisers by the Models being associated with this type of business.

### B.   Pricing of Work in the Modeling Industry

My opinions are based in part upon the way in which work in the modeling talent industry is priced.  The rates that models are paid are based upon numerous factors, the most important of which are the following:

1. A model's desirability, based on numerous factors, including the demand for his or her services.

2. A model's work history, such as prior associations, appearances, endorsements, advertisements, etc..

3. The nature of the business seeking a model's service, the type of product, whether exclusivity is sought, the embarrassment factor from being associated with the advertisement or marketing of certain products (condoms, personal hygiene, medications etc.) or similar considerations.

4. The history of the business seeking a model's services, the style, quality and production of previous advertising and promotions, and it hiring of other models and celebrities.

5. Exposure, namely how broadly the Model's likeness will be circulated.

6. The type of exposure, or the "**Usage**" of the image, such as:

    a. **Advertising:** use of an image to promote a business, company or event, on a website owned, controlled or contributed to by Paradise or in a magazine or publication;

    b. **Social Media**: including use on, but not limited to, Facebook, Twitter, Instagram, YouTube, and Tumblr;

    c. **Third Party promotion:** use of an image to promote a third party product, company or event;

    d. **Branding:** either manipulating an image to effectively "brand" a company and suggest the model is working at the resort, club, event or company or attaching dialogue or hash tag (#), which references, describes, labels or effectively categorizes a model and associates him/her to the product or business or similar products or business;

    e. **Coupon:** use of an image to offer discounts for entry, participation to a club, party or event or discounts on products;

    f. **Extra Usage:** including, but not limited to, billboards, flyers, TV usage, movies, downloads, posters, hangtags, banners and decorations;

7. The length of exposure of Usage, the period of use, and any renewals or rollovers.

8. The nature, duration and location of the actual shoot and production (In this case, the client bears no cost for the actual production of the images).

 While the list of all potential factors is extensive and case specific, the foregoing factors are illustrative and particularly relevant to our case.  It is the job of the talent agent to seek out particular types of work for a model, and to negotiate deals for a model based on all relevant considerations based on the particular model, the client and product, event or service advertised.

**Methodology Used In Formulating My Preliminary Opinions**

In estimating the compensatory, or *actual*, damages for each individual Model, I employed the same approach, methodology, and process that I would typically employ when determining what to charge a company or other entity that is interested in hiring models I represent.  In addition to employing the foregoing factors, I did the following:

1. I reviewed Paradise use of the photographic images of the Models, the product advertised, the Usages and the distribution of the images to various markets.

2. For the purpose of establishing a fee in an arms-length negotiation, I took into account the number of images used and the Usage of each.

3. For each of the individual Models, I established a fair market fee for the use of the Model's image, taking into account the Model's payment history over the course of their career, the Model's work quality, experience, exposure, and duration of career. For each Model, I have established a fee that I believe would be reasonable in light of industry standards, the way each Model's image was used, the earning history of each Model and the nature of Paradise business.

4. *The rate of compensation is established by multiplying each image  used by the number of separate types of Usage.*

## V.  CONCLUSION

After careful review of each Model's history, careers, development, prospective future earnings, reputations and the growing industry of endorsements, branding and new media with the possibility and potential for income from these sources, I am confident in my quotes and conclusions.  Again, these figures do not take into account additional Usages of which I'm not aware.

Use of these high caliber images is insidious in itself, but the nature of the industry Paradise is involved in, combined with the insinuations and language associated with the images can and will attach itself to each Model's career and as the images on the web are permanent cause irrevocable damage to reputations, future earnings and each Model's business and ability to conduct business.

As stated, the quotes are a minimum that would be required to compensate each Model for the unauthorized taking and use of these images, based upon a calculation of a cost per image per Usage, as follows:

| MODEL | VALUE/IMAGE (minimum) | # Images | Separate Usages | Damages |
|---|---|---|---|---|
| CIELO JEAN GIBSON | $15,000 | 1 | Advertising Brand Social Media, Coupon | $60,000 |
| DESSIE MITCHENSON | $25,000 | 1 | Advertising Social Media, Coupon | $75,000 |
| IRINA VORONINA | $20,000 | 2 | Advertising Social Media Coupon | $120,000 |
| JOHN COULTER | $10,000 | 1 | Advertising, Social Media Coupon | $30,000 |
| MAYSA QUY | $10,000 | 1 | Advertising, Brand Social Media Coupon | $40,000 |
| TOTAL | | | | $325,000 |

If **Resort at Paradise Lake LLC.,** had attempted to purchase the image rights of these five Models to market, advertise, or promote **Paradise Lake Resort**, its club, the resort or events, it would have had to pay at least **$325,000** based on current market conditions and each Model's earning capabilities.

The foregoing opinions, analysis, and conclusions are based upon the documents and information I have reviewed as of the date of this report, as well as my experience in the modeling industry. I reserve the right to amend or supplement these opinions, analyses and conclusions upon receipt of additional information that may become available.

10/29/2015

-----------------------------------------          ----------------------------------

**Stephen Chamberlin**                               **Date**

# CIELO JEAN GIBSON



**Cielo Jean "CJ" Gibson** is an American model who enjoys great success in her industry. Ms. Gibson was the Import Tuner magazine Model Search winner. Ms.Gibson is currently a model for the Falken Drift Team, and can be seen at Formula Drift events. Ms. Gibson has also appeared in several magazines including FHM, American Curves as a cover model, Supreme, MuscleMag International, Muscle & Fitness, Teeze, and in a Bowflex ad.

Ms. Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Ms.Gibson appeared in a home workout video called ENVY. Her character's name is Eliana, which stands for the "E" in ENVY. She stars alongside Martina Andrews (Natasha), Kara Monaco (Vala), and Brittany Lee (Yvette). Ms. Gibson continues to promote and market a number of different companies Sport and Fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Cielo Jean Gibson** for the identified images used by Paradise, at a *minimum*, I would quote **a rate of $15,000 per image per Usage.**

Paradise used one image for Advertising, on Social Media and as a Coupon (the image was tagged with "Couples and single ladies complimentary entrance ") and Branding ("lingerie night in Club Reveal, wear your sexiest!")

**One (1) image @ $15,000 times four (4) Usages (Advertising, Social Media,Branding, Coupon) =  $60,000**

**Cielo Jean Gibson's Actual Damages = $60,000**

# DESSIE MITCHESON



Dessie Mitcheson competed for Miss Pennsylvania USA at age18 and placed in the top ten.  Ms. Mitcheson soon became the Face of Playboy intimates. The following year she became the Face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Ms. Mitcheson was also named Maxim magazine's Hometown Hottie. Thousands of girls across the United States enter the yearly contest. The same year, Ms. Mitcheson was #100 on Maxim's Hot 100 list. She has graced the pages of multiple issues of Maxim, including a three page spread, two center folds, and landed the cover for the May 2014 Navy issue.

Ms. Mitcheson's career as a TV personality, actor and spokeswoman is booming. Recently featured as the main Tecate Beer ring girl in the biggest Pay per View event in history, the Mayweather v Pacquiao fight, which gave her world wide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially.

 Ms. Mitcheson has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes and J. Valentine.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Dessie Mitcheson** for the identified images used by Paradise, at a *minimum*, I would quote a rate of **$25,000 per image per Usage.**

Paradise used one image for Advertising, on Social Media, as a Coupon (image was tagged with "Happy Hour 5pm til close")

**One (1) image @ $25,000 times three (3) Usages (Advertising, Social Media, Coupon) =  $75,000**

**Dessie Mitcheson's Actual Damages = $75,000**

## IRINA VORONINA



Irina Voronina has modeled internationally for more than 14 years. Ms. Voronina was Playboy's Miss January 2001, and subsequently has been photographed by world famous photographers such as Teri Richardson, Mathew Rolston, Antoine Verglas, David LaChapelle and many others. Ms. Voronina landed numerous print campaigns, including Skyy Vodka, Miller Lite, Michelob Ultra, Bacardi, Sisley & Detour, to name a few. Ms.Voronina has appeared in numerous magazines including FHM, Maxim, Max (Italy), Ocean, Shape, 944, Knockout, Q (UK), People (Australia), and very recently on the covers of Kandy, Rukus and Browz magazine issues.

In 2008 Ms. Voronina was named a St Pauli Girl Beer spokes model and completed a year long public relations tour across the United States. She became first ever St. Pauli Girl to ring NYSE closing bell representing Constellation Brands. Ms. Voronina was the main host of Playboy Radio's weekly shows "Playmate Club" and interviewed hundreds of celebrities live on air.

Ms. Voronina has acted extensively, including feature films (Reno 911, "Balls of Fury" "Towelhead" and "Piranha 3DD") and television (as a regular in the sit-com 'Svetlana', on the live action show, 'Saul of the Mole Men', and as a guest star on Nickelodeon's "iCarly").

In 2013, Ms. Voronina was named Model Of the Year by Kandy Magazine based on the highest number of digital issue downloads on iPad and iPhone. Ms. Voronina recently passed the 2 million fans mark on her Facebook fan page; her Twitter & Instagram fan following is constantly growing.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Irina Voronina** for the identified images used by Paradise, at a *minimum*, I would quote **a rate of $20,000 per image per usage.**

Paradise used one image for Advertising, on Social Media and as a Coupon (image was tagged with "win a full year membership").

Paradise used a second image for Advertising, on Social Media and as a Coupon (image was tagged "Couples $20, Single ladies $10, single guys $45")

**Two (2) images @ $20,000 times three (3) Usages (Advertising, Social Media, Coupon) = $120,000**

**Irina Voronina's Actual Damages = $120,000**



John Coulter has a modeling career that has lasted over 20 years. Mr. Coulter has been represented by agencies in NY, Milan, Paris and London and worked with photographers such as Ellen Von Unwerth and David LaChapelle. Mr. Coulter shot a Jeans campaign with Mary J.Bligh and LiL' Kim.

Mr. Coulter has appeared in many TV commercials and music videos. Print body work is where he excels and was a perennial favorite for brands such as Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male. While Mr. Coulter remains a well-known model, he has also established himself as a highly successful artist. His talents are broad and he works constantly as a painter, sculptor, illustrator, costume designer and art director.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **John Coulter** for the identified images used by Paradise, at a *minimum*, I would quote **a rate of $10,000 per image per Usage.**

Mr. Coulter had one image used for Advertising, on Social Media, and as a Coupon (Image was tagged with "Lunch special:6pc Chicken wing basket with free fries")

**One (1) image @ $10,000 times three (3) Usages (Advertising, Social Media, Coupon) = $30,000**

**John Coulter's Actual Damages = $30,000**

**MAYSA QUY**



Maysa Quy is a model, actor, spokeswoman, pro body builder, ring girl, martial artist, fitness trainer and nutritionist. Some of her awards include; 2014 IFBB Patriots Pro Bikini, 2011 NPC USA Championship Bikini /1st Place,  IFBB Pro, NPC Los Angeles Championships Bikini - 1st Place,  NPC USA Championship - 3rd Place, NPC California Championship Bikini,  Contra Costa Bikini 3rd Place,  San Jose Bikini 1st  Overall, Strike-force/Ring-card Spokesmodel, Miss Planet Beach and CaliforniaHealth & Wellness Recipient.

Ms. Quy has modeled and appeared in many magazines, catalogues and campaigns for clients including Skechers Shoes, Benefit Cosmetics, CoverFX cosmetics, Dreamgirl Int'l Lingerie, Mini Cooper USA, T-mobile, Apple, Nike, Microsoft, Davids Bridal and was a presenter at the  People Choice Awards.

Ms. Quy was a featured performer in the National Microsoft "Stay Connected" TV commercial.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Maysa Quy** for the identified images used by Paradise, at a *minimum*, I would quote **a rate of $10,000 per image per Usage.**

Paradise used one image of Maysa Quy for  Advertising, on Social Media, for Branding (Image was tagged with "Lingerie night in Club Reveal wear your sexiest") and as a Coupon (image was tagged "Couples & Single Ladies Complimentary Entrance")

**One (1) Image @ $10,000 per image times four (4) Usages (Advertising, Social Media, Brand, Coupon) = $40,000**

**Maysa Quy's Actual Damages = $40,000**

# CURRICULUM VITAE OF
## STEPHEN CHAMBERLIN
100 S. Doheny Drive
Los Angeles CA 90048
310 666 3629
## Professional Experience

**Rumblestorm Management**
**January 2009 to present**
**Owner - Director**

Rumblestorm management is a worldwide sourcing and management company that operates as a paid scout and development platform for models working all over the world. Currently managing models both male and female in the US, France, Great Britain, Spain, Germany, Japan, Singapore, Italy, Australia and New Zealand.

Agencies that I am actively engaged and working for and with include but not limited to, IMG Models Worldwide, DNA Management NY, Major Models Worldwide, NY Models NY, Elite NY, Ford Models NY, Society Management NY, Women NY, LA Models LA, M Management LA, Next Models Worldwide, Silent Models Paris, Premier Management London, Select Models London and Storm Management London.

I place models with these and other agencies in multiple countries. I book, negotiate, invoice, collect commissions, source tear sheets and monitor usage of jobs.

**Warning Management Inc.**
**November 1998 to August 2008**
**Founder - Partner - Director**

A full service management company representing fashion models, actors, commercial talent, musicians, bands, photographers, directors, brands and companies. Revenues are primarily derived from commissions paid by clients, from engagements including but not limited to, bookings, endorsements, sponsorships, commissions, residuals, exclusivities and royalties. The mediums worked in include but not limited to, Print, Television, Videos, Packaging, Billboards, Point of Sale, Corporate Videos, Appearances, Speaking Engagements, Film, Events, Event Management, Organization, Consultancies and Negotiations.

My responsibilities were total management and hands on involvement in every facet of the company. As director and signatory for the company, I had a complete working knowledge of every negotiation, deal and client that we represented. I was responsible for not only branding and development of the major clients but also for branding and development of the company. I built the company from one employee and zero revenue into a publicly traded company with revenues of over $30 million per annum.

**LA Model Management (Los Angeles, CA)**
**NY Model Management (New York, NY)**
**December 1991 to May 1998**
**Agency Director**

LA model Management is one of the world's oldest largest and most respected agencies. I represented models, commercial talent, actors, production services, runway, hair and make-up artists and casting services.
My responsibility was the development of talent and the International marketing of the company to clients worldwide. I established the first corporate client endorsements by actors and opened a whole new industry within an industry. I developed Model Searches and TV shows that were fully sponsored and are still in production now.

In January of 1995 I was relocated to NY. After leasing a premise, renovating, full build out, obtaining and installing equipment, hiring staff, training staff and establishing a client base, I opened NY models on behalf of the owner of LA models. Both NY and LA models are thriving still today.

**Spott Model Management (Sydney Australia)**
**January 1989 to August 1991**
**Agency Director**

Spott models was a boutique agency in Sydney specializing in the development of models for the world market. In the two years working I sent over a hundred models out to various agencies worldwide and represented more than two hundred international models on their visits to Australia.

**Association of Surfing Professionals. (ASP)**
**December 1989 to March 1990**
**Tour Representative / Sponsorship Director**

The Association Of Surfing Professionals is the governing body for professional surfing worldwide. I was the Pro Surfers representative on tour. I was the middle negotiator for all problems and communications between the Surfers and the Administrative body. I also wrote and actively sought Corporate sponsorships for both the Association and Professional Contests. I served as Contest Director on a number of International Events.

**Australian Professional Surfers Association (APSA)**
**December 1985 --March 1990**
**Part Time Director**

The Australian Professional Surfers Association is the local governing Association for the development of Professional Surfing in Australia and the regional representative for the World body the ASP. My responsibilities were to raise sponsorship money for a fully funded National circuit which was the satellite events that helped Australian and International surfers progress to the World Pro Tour. I organized a national program of contests and established a point system for advancement and selection to the World Tour.