UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
8:16-CV-00791-CEH-AAS

CIELO JEAN GIBSON, DESSIE
MITCHESON, IRINA VORONINA, JOHN
COULTER and MAYSA QUY,

    Plaintiffs,

Vs.

RESORT AT PARADISE LAKES, LLC d/b/a
PARADISE LAKES RESORT d/b/a
PARADISE LAKES and JERRY BUCHANAN,

    Defendants.
_____/

## PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF DEFENDANTS' EXPERT MARK ZABLOW

Plaintiffs, Cielo Jean Gibson, Dessie Mitcheson, Irina Voronina, John Coulter, and Maysa Quy, (collectively, "Plaintiffs"), file this Motion in Limine to Exclude the Opinion and Testimony of Defendants' Expert Witness Mark Zablow, and in support state as follows:

## BACKGROUND HISTORY

This case arises from Defendants' unauthorized use and theft of Plaintiffs' images and likenesses for the purpose of advertising, solicitation, and promotion of their swingers/nudist resort, Resort at Paradise Lakes, LLC doing business as Paradise Lakes Resort also doing business as Paradise Lakes. (Doc. 31 at ¶¶ 1, 7, 43 (Gibson), 54 (Mitcheson), 65-66 (Voronina), 79 (Coulter), 90 (Quy).) Plaintiffs are all successful and professional models who make a living by promoting their images and likenesses to various clients and take great pride in their reputation in the modeling industry. Plaintiffs' images were taken from the original photographs and plastered all over Defendants' sexually explicit flyers and promotional material. (*See e.g.*, Doc. 31 at ¶ 43

1

(Gibson).)[1] Defendants' promotional material attached to the First Amended Complaint as Exhibits A-E contains lewd, sexually explicit, and lascivious language implying that Plaintiffs are swingers, nudists, employees, or endorsers of Defendants' nudist/swingers resort. *Id*.

As a direct and proximate result of Defendants' unauthorized publication of Plaintiffs' images, Defendants received benefits, including but not limited to monetary payments, increased promotional, advertising, marketing, and other public relations benefits, notoriety, and publicity, as well as an increase in business revenue, profits, proceeds, and income, and accepted those benefits while Plaintiffs failed to receive benefits for the use of their images to which they are entitled to. *Id*. at ¶ 11. As such, after the Court's ruling on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, Plaintiffs have asserted the following claims against the Defendants: violation of the Lanham Act, 15 U.S.C. §1125(a): False Advertising (Count I); violation of Fla. Stat. § 540.08: Right of Publicity – the unauthorized misappropriation of name/likeness (Count II); violation of common law Right of Publicity – unauthorized misappropriation of name/likeness (Count III); violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft (Count V); Unjust Enrichment (Count VI); Unlawful Conversion (Count VII); Unfair Competition (Count VIII); and violation of the Lanham Act, 15 U.S.C. §1125(a): False Endorsement (Count XII).

## ARGUMENT

A motion *in limine* is a procedural device to obtain an early ruling on the admissibility of evidence. *See U.S. v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The purpose is to prevent the introduction of evidence that may impact the fairness of trial. *See Biscayne Cove Condo. Ass'n,*

---

[1] Each Plaintiff pleads the same allegation and the cited section is an example of similar allegations for each of the other Plaintiffs.

*Inc. v. QBE Ins. Corp.*, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013). Where a case is to be tried before a jury, rulings *in limine* serve to give "counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *Heller*, 551 F.3d at 1112. In an abundance of caution, Plaintiffs file this motion *in limine* to prevent the jury from being exposed to information that is either irrelevant, unreliable, misleading, late-disclosed or otherwise inadmissible in this case.

Specifically, Defendants offered the report of Mark Zablow (Zablow)[2] as a purported expert to provide testimony regarding Plaintiffs' damages and the value of the images used by Defendants in this matter. Zablow's opinion regarding Plaintiffs' damages should be excluded by this Court because it fails to satisfy *Daubert's* requisite elements: competency, reliable methodology, and helpfulness. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Zablow is not competent to render an opinion on license fees for images used in the advertisements of a nudist/swingers resort and other adult entertainment clubs or resorts. Moreover, Zablow's opinion is unreliable in both its methodology and application, is irrelevant and will not assist the trier of fact.

Zablow's Expert opinion also fails to consider key factors in the methodology used to determine damages. Specifically, Zablow's report overlooks the fact that Defendants have pirated and altered the images, likeness and/or identity of each Plaintiff Model for advertising and commercial purposes and fails to consider that the use of Plaintiffs' images or likenesses was without consent and that this use has jeopardized each Plaintiff's image, brand and marketability causing damages.

---

[2] Exhibit A, Report of Mark Zablow.

Zablow is the CEO of Cogent Entertainment Marketing, a brand solutions agency that specializes in celebrity engagement, influencer marketing, and social and digital media. Stated differently, Zablow is a talent buyer and not an Image Expert. As discussed briefly above, Zablow's opinion is also unreliable in both its methodology and application and will not assist the trier of fact. In his report, Zablow proffered an opinion as to each Plaintiff's E-Score, IMDBRO Star Meter, Buzz Index, Models.com and FMD.com presence or rating; however, at no time did Zablow proffer his opinion as to the amount of the individual Plaintiff Models' damages. Similarly, Zablow's opinion purportedly relies on a "Fair Market Value" (FMV) calculation but Zablow's expert report only lists several factors which he opines have an impact to a general FMV calculation but fails to connect these factors to the actual subject images. Moreover, Zablow's report provides no damages ranges and fails to attribute specific values, either high or low to the factors which he opines contribute to a FMV, such as damage to professional standing and publicity.

Zablow's report also fails to show how he calculated the FMV. For instance, there is no baseline value for each Plaintiff Model's image nor a consideration for the number of images and the number of usages to arrive at the FMV. As will be discussed below, Zablow's expert damage opinion is not based on any reliable methodologies. In fact, Zablow's report itself states that he was unable to arrive at a FMV calculation for any Plaintiff. In sum, the underlying factors upon which Zablow's hypothetical FMV calculations are based cannot be analyzed or challenged because Zablow failed to identify any objective data. Indeed, Zablow's report only opines as to his idea of the factors which should be considered when arriving at a FMV calculation; as such, Zablow's report constitutes nothing "more than subjective belief or unsupported speculation."

*Daubert*, 509 U.S. at 590. Accordingly, Zablow's report and testimony should be excluded as unreliable.

## **MEMORANDUM OF LAW**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed.R.Evid. 702 (2016). When evaluating evidence proffered under Rule 702, the district court acts as a gatekeeper to ensure that all expert testimony is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 5226 U.S. 137, 147-148 (1999); *Daubert*, 509 U.S. 579; *United States v. Frazier*, 87 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

The United States Supreme Court has explained that Federal Rule of Evidence 702 compels trial courts to perform the critical "gatekeeping" function regarding the admissibility of expert opinion testimony. "*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (internal quotation omitted) (emphasis added). The importance of this function cannot be overstated, as the Supreme Court explained in *Kumho Tire Co.*, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

In keeping with their critical gatekeeping function, the trial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Kilpatrick*, 613 F.3d at 1335; *Frazier*, 387 F.3d at 1260. *See also Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1328 (11th Cir. 2014). As the court explained in *Frazier*, the party offering the expert testimony bears a substantial burden of establishing each of these required elements, and failure to do so is fatal to the admissibility of the expert's testimony. *Id*. The trial court has discretion in determining whether to receive or exclude evidence. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092 (Fla. 11th Cir. 2005) (appellate court reviews a trial court's ruling admitting or excluding expert testimony for abuse of discretion and it will not reverse unless the ruling is manifestly erroneous, even if the ruling may be outcome determinative) (citations omitted).

In all cases, the trial court must find that an expert witness's proffered testimony "is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed.R.Evid. 702 advisory committee's note (2000 amends.) The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.' *Frazier*, 387 F.3d at 1262 (citing Fed.R.Evid. 702 advisory committee's note (2000 amends.)). "If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Frazier*, 387 F.3d at 1261. A court must focus on methodology, not conclusions. Here, Defendants have failed to meet the burden as to the testimony

of their damages expert Zablow and all three *Daubert* elements: competency, reliable methodology, and helpfulness.

A.     **Mark Zablow is Not Qualified to Testify Competently**

A witness is not qualified to testify on issues outside of his area of expertise. *Montgomery v. Noga,* 168 F.3d 1282 (11th Cir. 1999). Zablow seeks to provide opinion relating to the valuation of Plaintiff Models' images as used by Defendants on their social media. Zablow also seeks to price the work in the case ("the image and likeness of Plaintiff Models") using a Fair Market Value Analysis. However, Zablow is not qualified to testify competently on these matters. Zablow does not have experience in representing unwilling buyers and/or sellers or negotiating any licensing or contract rates, which is precisely the expertise required in order to value the images in this matter. In addition, Zablow also lacks any experience in negotiating or pricing model contracts in the swingers/nudist resort industry. Zablow's testimony must be excluded in this case due to a lack of competency.

B.     **Mark Zablow's Methodology is Not Reliable**

In assessing reliability under the second *Daubert* prong, courts consider the following non-exhaustive factors: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; and (4) whether the technique is generally accepted by the scientific community." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (citations omitted). The court's gatekeeping inquiry, however, must be tied to the facts of the case before it. *Kumho*, 526 U.S. at 150 (citing *Daubert*, 509 U.S. at 591). As such, when an expert's proffered testimony is primarily based on experience, as is Zablow's in this case, relevant reliability concerns may also focus on personal knowledge and experience. *Id*. For instance, in evaluating the testimony of an

experienced-based expert, the trial court may inquire as to how often the expert's experience-based methodology has produced erroneous results; whether such experienced-based methodology is generally accepted in the expert's relevant community; and whether the expert's preparation is one that others in the expert's field would recognize as acceptable. *Id*. In all cases, the trial court must find that an expert witness's proffered testimony "is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed.R.Evid. 702 advisory committee's note (2000 amends.)

The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.' *Frazier*, 387 F.3d at 1262, citing Fed.R.Evid. 702 advisory committee's note (2000 amends.). Expert witness testimony should be excluded when there is "simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Witt v. Stryker Corp. of Michigan*, 648 Fed. Appx. 867, 873 (11th Cir. 2016). In conducting its analysis, the court as a gatekeeper must ensure not only that the expert's methodology is reliable, but also that that the expert reliably applied his methodology. *Kumho*, 526 U.S. at 154. That is, whether the expert reliably analyzed the underlying data and whether the expert reliably drew conclusions from this analysis and from the underlying data. *Id*. Additionally, when the expert is proffered to provide non-scientific, experience-based testimony, "the Court must satisfy itself that the witness has appropriately explained how his experience leads to the conclusion he reached, why that experience provides a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Clena Investments, Inc. v. XL Specialty Ins. Co.,* 280 F.R.D. 653 (S. D. Fla. 2012). In this case, Zablow does not have any experience representing unwilling buyers and/or sellers or negotiating any licensing or contract rates. In addition, he lacks any experience in negotiating or pricing model contracts in the swingers/nudist resort industry. In other words, he has no "other specialized knowledge" as required by Rule 702.

**C.     Expert Opinion and Testimony that is Reliable as to Damages in Similar Cases**

In intellectual property cases, the determination of actual damages may be based on the value of a "hypothetical license." *See e.g. Beastie Boys v. Monster Energy Co.*, 983 F.Supp2d 369 (S.D. New York 2014) (Lanham Act); *Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings*, 09-civ-1426 JRT/SER, 2011 WL 4537970, at *4 (D. Minn. 2011) (Lanham Act). In patent cases, this concept is referred to as a "reasonably royalty." *Id*. While a hypothetical negotiation "necessarily involves an element of approximation and uncertainty," it also "requires a court to hypothesize, not to speculate." *See, respectively, Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) and *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). This is so because a "damages theory must be based on sound economic and factual predicates." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (internal quotation and citation omitted). The amount of the hypothetical license is the amount that a willing buyer would have been reasonably required to pay a willing seller. *Oracle Corp. v. SAP AG*, 765 F.3d 1081 (9th Cir. 2014); *Real View, LLC v. 20-20 Techs, Inc.*, 811 F.Supp.2d 553, 556 (D. Mass 2011). The touchstone of the hypothetical license fee is reasonable market value and the fee is only appropriate if it is not based on undue speculation. *Oracle*, 765 F.3d at 1088; *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004). "Thus, [the court does] not ask what the owner would like to have charged if unconstrained by reality, but what a willing owner actually would have charged after negotiation with the buyer. That is, fair market value is based on 'an objective, not a subjective analysis.'" *Oracle*, 765 F.3d at 1088 (internal quotation and citation omitted). *See also Rivera v. Mendez & Companier*, 988 F.Supp.2d 174, 179-180 (D. P.R. 2013) ("The hypothetical does not focus on the subjective willingness or valuations of the parties, but rather the objective fair market value of the use.") (citing *Davis v. The Gap, Inc* 246 F.3d 152,

166 (2d Cir. 2001)). Hypothetical license fees that lack a foundation in objective evidence do not satisfy the requirements of Rule 702 and they must be excluded from evidence. *See Star Disc. Pharmacy, Inc. v. MedImpact Healthcare Sys., Inc*., 5:11-CV-02206-AKK, 2014 WL 4470720 (N.D. Ala. 2014) aff'd, 614 Fed. Appx. 988 (11th Cir. 2015); *Rivera*, 988 F.Supp.2d at 179-180.

An expert's report must contain citations to the actual facts or data relied on in his opinion. *Star Disc. Pharmacy*, 2014 WL 4470720 at *8. Absent this underlying data, an expert's opinion constitutes nothing more than inadmissible theoretical speculations, unsupported assumptions and conclusory allegations. *Id*. This is so because "theoretical speculations, unsupported assumptions, and conclusory allegations without supporting facts have no probative value." *Id*. "[C]ertainly where an expert's testimony amount to no more than a mere guess or speculation, a court should exclude his testimony." *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988). Additionally, in the context of a hypothetical license, the expert must consider objective evidence of actual historical rates as well as the rates for comparable transactions. *Id*. *See also Rivera*, 988 F.Supp.2d at 179-180.

Licenses that "ar[i]se from divergent circumstances" and "covered different materials" are insufficient to support a damage award. *Enpat, Inc. v. Budnic*, 773 F. Supp. 2d 1311, 1315 (M.D. Fla. 2011) (citing *Lucent*, 503 F.3d at 1329). Any comparable transactions, must be sufficiently comparable to the hypothetical license at issue in the lawsuit; a hypothetical license fee cannot rely on other transactions that are "radically different." *Hollister Inc. v. Zassi Holdings, Inc*., 3:13-CV-132-J- 32PDB, 2016 WL 1238025, at *12 (M.D. Fla. 2016) (on appeal 17-10135). In this case, Zablow proffered an opinion as to the individual Plaintiff Models' damages but did not rely on any methodologies or the value of a hypothetical license. His report surmises that the Fair Market Value of Plaintiffs' images are missing key factors when being scientifically calculated, that the

stated damages by Plaintiffs are grossly overvalued, that the financial benefit gained from the use of Plaintiffs' images is grossly overvalued, and that no quantifiable damages to Plaintiffs' brand were provided. *See* Exhibit A, Report of Mark Zablow, p. 2. These are conclusory statements with no articulated methodology or support within the report as required by *Daubert*. As such, Zablow's conclusions cannot be tested or contradicted because they are based upon nothing but subjective conclusions which do not logically follow any process.

All Zablow did was perform an internet search and opined that Plaintiffs' images were essentially worthless. However, he did not consider the actual images, the actual models, or any of the factors properly used in order to value the usages in the matter before this Court. Zablow's opinion on the value of damages suffered by Plaintiffs as it relates to the actual damages using a vague Fair Market Value analysis is not based on any methodologies. His calculations have not been and could be tested or validated. Moreover, Zablow is unable to explain "how his experience leads to the conclusion he reached, why that experience provides a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653 (S.D. Fla. 2012). There is simply too big a jump from Zablow's lack of analysis to the actual valuation of the imagery in this case.

**D.    Mark Zablow's Report and Determination of the Value of Each Plaintiff's Image is Unreliable**

Zablow's report fails to address the implications Plaintiffs have faced by being associated with a swingers/nudist resort. His report also fails to provide any record of when, how and where any of his research was performed. Lacking any objective evidence, it is impossible to analyze or challenge the underlying factors upon which Zablow based his report on. Further, Zablow's lack of citation to the actual facts and/or data relied on in his opinion renders his methodology unreliable due to a lack of foundation in objective evidence. *Star Disc. Pharmacy*, 2014 WL 4470720 at *8.

Indeed, absent any specific supporting facts, Zablow's opinion can neither be duplicated nor tested. Such an opinion lacks any probative value and constitute nothing more than mere unsupported assumption and speculation. Zablow's valuations were not based on any comparable transactions either. For example, as it pertains to Plaintiff Voronina's images, Zablow set the value as E-Score: N/A, IMDBPRO Star Meter: 24,009, Buzz Index: XXX, Models.com: N/A, and Fashion Model Daily: N/A. *See* Exhibit A, Report of Mark Zablow, p. 7. However, Zablow's report fails to provide any information as to the calculation, methodology, or reliability of any of these scores upon which he relied. He simply lists them as fact.

Zablow's calculations and valuations ignored and failed to apply all relevant evidence. Most importantly, he did not consider the Plaintiff Models' original rates, usage rights or contracts in which the Plaintiff Models were originally paid for the images which were later used by Defendants. He failed to consider Plaintiffs' status; the fact that no Plaintiff has giver his/her permission to Defendants to use Plaitniffs' images to promote Defendants' nudist/swingers resort; the fact that no Plaintiff sells his/her images to stock companies; or the fact that the subject images were taken without permission and manipulated to position the images of Plaintiffs amongst lewd and sexually-charged slogans. As such, it is clear that Zablow's opinion fails to consider actual factors relevant to the valuation of the usages at issue in this case. Instead, his opinion constitutes nothing more than wholly unsupported and conclusory assumptions. Zablow's speculative opinion should be excluded under Federal Rule of Evidence 702 as unreliable. *See e.g. Oracle*, 765 F.3d at 1088-1089.

**E. Neither Mark Zablow's Expert Report nor Testimony Will Assist the Trier of Fact**

*Daubert's* helpfulness element turns on whether the expert's testimony "concerns matters . . . beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. *See also Edwards v. Shanley*, 580 Fed.Apx. 816, 823 (11th Cir. 2014). Helpfulness is primarily a question

of relevance and it requires a valid connection to the pertinent inquiry as a condition of admissibility. *Daubert*, 509 U.S. at 595. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *F.T.C. v. Washington Data Res.*, 8:09-CV-2309-T-23TBM, 2011 WL 2669661, at *1 (M.D. Fla. 2011) (citing *Frazier*, 387 F.3d at 1262–63). In this case, Zablow's report is incomplete, unreliable and without support. In addition, his testimony will not be helpful to the jury and should be excluded. In this case, to the extent it is based on objective evidence, Zablow's testimony, at best, is nothing more than a self-serving hearsay.

## **CONCLUSION**

As it relates to Plaintiffs' damages, only expert opinion on hypothetical license fees for images used in the advertisements of nudist and swingers resorts would be relevant, admissible and probative. Mark Zablow's Expert Report is based on opinion and is unreliable in both its methodology and application. Specifically, his report and testimony is irrelevant and will not assist the trier of fact. In its gatekeeping role, this Court should exclude Zablow's testimony. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309) (11th Cir. 1999) ("The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value.")

WHEREFORE, Plaintiffs, Cielo Jean Gibson, Dessie Mitcheson, Irina Voronina, John Coulter, and Maysa Quy, hereby move this Court to grant this motion and exclude the expert opinion testimony and report of Defendants' expert witness Mark Zablow, and preclude Defendants from presenting to the jury or making any reference to the above described matters, and any other relief it deems just and proper.

## RULE 3.01(g) CERTIFICATE

In accordance with Local Rule 3.01(g), the undersigned certifies that she contacted Defendants' counsel to resolve the issues raised by this motion, however, the parties could not come to an agreement on the scope of same.

Dated: August 23, 2017

Respectfully Submitted,

By: */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com
THE CASAS LAW FIRM, P.C.
Brickell Bayview Center
80 S. W. 8th Street, Suite 2000
Miami, FL 33130
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 23, 2017, I electronically served the foregoing document with all counsel of record identified on the below Service List.

By: */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com

## SERVICE LIST

Eric M. Zivitz, Esq.
Tracy Jurgus, Esq.
Butler Weihnuller Katz Craig, LLP
Brickell Bayview Center
80 S.W. 8th St., Suite 3300
Miami, Florida 33130
ezivitz@burler.legal
tjurgus@butler.legal
*Attorneys for Defendants*